**Dedan KIMITHI, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 52568.

Court of Criminal Appeals of Texas.

Feb. 9, 1977.

**324**

E. Brice Cunningham, Dallas, for appellant.

Henry Wade, Dist. Atty.; Maridell J. Templeton, John Ovard and David C. Schick, Asst. Dist. Attys., Dallas, Jim D. Vollers, State's Atty., David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

ODOM, Judge.

Appellant was convicted for aggravated robbery. His punishment was assessed by the court at seventy-five years' imprisonment.

◼ The first four grounds of error urge that the trial court abused its discretion when it directed the bailiff and other deputies to handcuff and gag the appellant in the presence of the jury panel and the jury. We overrule these grounds of error and hold that the trial court's actions were entirely proper under the circumstances of this case.

The appellant informed the trial judge before the selection of the jury that he did not want to be present during any of the trial proceedings. He also requested the court to allow him to inform the jury that he did not desire to participate in the trial. The judge denied this request and recessed the proceeding until after lunch.

After the recess, the bailiff was forced to handcuff the appellant in order to bring him into the courtroom. The judge informed the appellant that he would be restrained if he did not conduct himself in a proper manner. The court then told the appellant that the handcuffs would be removed if he promised not to cause any

physical disturbance. The appellant agreed to this and his restraints were removed. The jury panel was then brought into the courtroom.

At this point, the appellant began asserting that he had been choked and assaulted by the officers. The jury panel was removed from the courtroom. The court promptly obtained a medical examination for the appellant.

The physician who made the medical examination stated that the appellant was not injured. The appellant demanded the court to obtain another physician to examine him. The court denied this request and had the jury panel returned to the courtroom.

Upon the panel's return, the appellant stated that the repressive racism of the proceedings had made him ill and that he wanted another physician. The court asked the appellant to remain quiet. The appellant, however, continued his demands. The court instructed the bailiff to restrain the appellant's hands and silence him. The bailiff, with the help of other officers, placed some tissue paper in the appellant's mouth. The paper remained in his mouth only briefly. The jury panel was once again removed from the courtroom.

The court, at this stage in the proceedings, informed the appellant that he did not want to hurt him or restrain him in any manner. The judge implored the appellant to control himself and to conduct himself in an orderly manner. The proceedings were then recessed for the day.

During the evening, the court had another physician examine the appellant. This physician concluded that the appellant was physically capable of standing trial.

On the second day, the behavior of the appellant became even more unruly. In the presence of the jury panel, appellant called the judge a racist and demanded, on numerous occasions, that the judge disqualify himself. He repeatedly referred to the court as a "kangaroo court."

The record reflects that the judge once again asked the appellant to behave. The judge also warned him that he would be removed from the courtroom if his conduct continued. The court's requests went unheeded. The judge then held the appellant in contempt and removed him from the proceedings stating that the appellant could return if he would control himself.

Later, during the reading of the indictment to the jury, the appellant resumed his disruptive conduct. He demanded that he be tried by the United Nations. He called the court and the jury racists. He demanded the disqualification of the judge.

The judge asked the appellant to allow the trial to proceed. The appellant, however, continued his disruptions. He stated that his name was incorrect on the indictment. When inquiry was made into his proper name, he supplied two patently false answers: Garthamaumau and Rip Van Winkle. Finally, upon appellant's request, the name on the indictment was changed from Derrell Dwayne Smith[1] to Dedan Kimithi.

The judge had the appellant gagged and handcuffed when the disruptions persisted. Finally, the appellant was removed from the courtroom. During the remainder of the trial he was brought back to the courtroom only for identification purposes. He was handcuffed at these stages in the proceeding.

Initially, we observe that the judge instructed the appellant that he could return to the courtroom if he would conduct himself in an orderly fashion. Appellant's counsel were instructed to notify the court when the appellant was willing to behave.

We also note that the court only ordered the appellant to be handcuffed and gagged when it was obvious that the disruptions would not cease. Furthermore, the record reflects that the court attempted to prevent the jury panel and the jury from observing the unruly behavior.

1. The record reflects several aliases: Derrell Dewayne Smith, also known as Derrell Dwayne Johnson, also known as James L. Moore.

■ We now give our reasons for overruling appellant's first four grounds of error. A prisoner should not be bound and gagged during a trial unless such action is absolutely necessary for the maintenance of an orderly and peaceable trial. In *Gray v. State,* 99 Tex.Cr.R. 305, 268 S.W. 941, at 949, this Court stated:

". . . if, in the sound discretion of the court, it appears necessary to retain his shackles to prevent the escape or self-destruction of the prisoner, or to prevent him from injuring bystanders or officers of the court, or if necessary to maintain a quiet and peaceable trial, the court may try the prisoner without having the shackles removed; his action being subject to the closest scrutiny and review by the appellate court."

In *Moore v. State,* Tex.Cr.App., 535 S.W.2d 357, we repeated this standard and held that the record must affirmatively demonstrate the reason why a handcuffed defendant was viewed by the jurors. The record in the case at bar establishes that the trial judge's actions were completely justified.

Indeed, the judge showed considerable compassion and restraint in his response to the appellant's behavior. The court promptly responded to the appellant's request for medical attention. The appellant was also warned on numerous occasions what the consequences of his acts would be. The appellant was informed on several occasions that he could return to the courtroom and participate in the proceedings unrestrained if he would conduct himself in a responsible manner.

No abuse of discretion is shown. The first four grounds of error are overruled.

■ Grounds of error five through ten maintain that constitutional error was committed because the appellant was not personally present at each stage of the trial. The appellant also argues that his right to confront the witnesses against him was violated by the trial court. We do not agree with these contentions.

In *Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353, the United States Supreme Court stated:

"It is essential to the proper administration of criminal justice that dignity, order and decorum be the hallmarks of all court proceedings in our country. The flagrant disregard in the courtroom of elementary standards of proper conduct should not and cannot be tolerated. We believe trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case. No one formula for maintaining the appropriate courtroom atmosphere will be best in all situations. We think there are at least three constitutionally permissible ways for a trial judge to handle an obstreperous defendant like Allen: (1) bind and gag him, thereby keeping him present; (2) cite him for contempt; (3) take him out of the courtroom until he promises to conduct himself properly." 397 U.S. at 343–344, 90 S.Ct. at 1061.

The reasoning of the Supreme Court is applicable to the circumstances of the case at bar. The appellant demonstrated his unwillingness to conduct himself in a dignified manner each time he was brought into the courtroom. Therefore, his absence from the courtroom during the proceedings and the resulting denial of personal[2] confrontation of the witnesses against him were a consequence of his own acts, which acts constituted a waiver of those rights to the extent that the exercise of them was impaired by his lawful removal from the court. Cf. *Gonzales v. State,* Tex.Cr.App., 515 S.W.2d 920. See also Art. 33.03, V.A.C. C.P. Grounds of error five through ten are overruled.

■ The next ground of error makes complaint of the admission of a penitentiary packet into evidence. Appellant argues that this document was not properly au-

2. The right of confrontation was exercised by counsel who represented him in the courtroom during the trial.

thenticated pursuant to Section 4 of Art. 3731a, V.A.C.S. (The Official Documents Act).

This evidence of appellant's prior conviction was introduced at the punishment stage of the trial, but it was not introduced for purposes of enhancement. Furthermore, the court assessed the punishment. The jury did not participate in this stage of the proceedings.

The trial court, as the finder of fact at the punishment stage of the trial, is presumed to have disregarded any evidence that was improperly admitted. See, *Maden v. State,* Tex.Cr.App., 542 S.W.2d 189. Appellant's ground of error is overruled.

■ Appellant's twelfth ground of error complains of the judge's conduct during the examination of Joe Silva, an eyewitness to the offense. This witness was asked if the person who had committed the offense was in the courtroom. Appellant urges that after the question was asked the court pointed at the appellant and asked the witness if he could see him. Appellant claims that Silva's identification testimony was tainted by the court's inquiry.

We disagree. Silva had previously identified the appellant outside the presence of the jury in a hearing held before the court. During the examination of Silva before the jury, the appellant started another disruption. A handkerchief was placed over his mouth to silence him. The record indicates that the judge asked Silva if he could see the appellant because he wanted to insure that a proper identification was made. We perceive no error. The twelfth ground of error is without merit.

■ Grounds of error thirteen through nineteen also claim that the identification testimony of three witnesses was tainted by the actions of the trial court. Appellant claims that the identification testimony was tainted because he was forcibly brought into the courtroom in handcuffs and because he was surrounded by deputies when the identification was made.

We will review the procedure used in regard to the identification evidence. The three witnesses who identified the appellant were all at the scene of the offense when it occurred. The trial court had each of these witnesses identify the appellant outside the presence of the jury. After this, the witnesses were permitted to identify the appellant in open court before the jury.

The appellant was handcuffed and sometimes gagged during both proceedings. He was also accompanied by officers of the court at the time he was identified.

We find no error.

■ The final ground of error challenges the sufficiency of the evidence. This claim is without merit. Three eyewitnesses identified the appellant as the perpetrator of the offense. The ground of error is overruled.

The judgment is affirmed.