Moises MOLINA, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–96–01114–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

May 28, 1998.

Rehearing Overruled July 9, 1998.

David Cunningham, Houston, for appellant.

Carmen Castillo Mitchell, Houston, for appellee.

Before MURPHY, C.J., and HUDSON and CANNON,* JJ.

## OPINION

CANNON, Justice, (Retired).

Appellant, Moises Molina, pleaded not guilty before a jury to the offense of aggravated sexual assault. He was convicted, and the trial judge assessed punishment, enhanced, at 60 years imprisonment in the Texas Department of Criminal Justice, Institutional Division, and a $10,000 fine. In nine points of error, he contends the trial court erred in (1) ordering him bound and gagged during the trial; (2) denying his motion for mistrial based on the binding and gagging; (3) denying his motion to quash the jury

* Senior Justice Bill Cannon sitting by assignment.

panel based on the binding and gagging; and (4) admitting hearsay testimony.

## Background

In January of 1995, appellant was alone at home with his eight year-old stepdaughter, the complainant. While they were watching television on the couch, appellant fondled complainant's vaginal area and pulled her off the couch on top of him. He undressed her, fondled her again, and took her to the kitchen. There, he sat her on the counter and attempted sexual penetration. He stopped when he heard the complainant's mother, Cecilia Quintanilla, coming home. Appellant told the complainant to get dressed, and he put on his shorts. Quintanilla entered the apartment and saw appellant's reflection in a mirror as he was tying the drawstrings of his shorts and threatening the complainant. Suspicious of her husband's behavior, Quintanilla called some friends from church (the Millers) and asked them to come over so she could question her daughter regarding what had happened.

When the Millers arrived, appellant was nervous and the complainant was upset. The complainant, afraid her mother would punish her, simply told her mother that appellant had pulled down his shorts and his underwear; however, she told Mrs. Miller about the attempted penetration. Quintanilla did not report the incident for over eight months, when she told authorities at the Children's Assessment Center. The complainant then told the Center's interviewer about the entire incident. Dr. Robin Williams examined her and found injuries consistent with penetrating trauma.

Prior to voir dire but before the jury panel was present, appellant complained to the court about his attorney's handling of his case. While the court addressed appellant's complaints, appellant interrupted several times, and the court admonished him not to raise his voice or interrupt. The last thing the judge said to appellant before bringing the panel back in was, "I don't want you screaming at your lawyer or talking out of turn."

Appellant was silent throughout the State's voir dire, but as his attorney was about to begin voir dire, appellant interrupted, restating his request that counsel not be allowed to represent him. In the panel's presence, he accused his attorney of tampering with witnesses and threatening witnesses to dissuade them from testifying. The judge told appellant he was out of order and asked him to be seated. When appellant continued to object, the judge asked the bailiff to take appellant out of the courtroom. Defense counsel approached the bench and moved for a mistrial and to quash the jury panel. The court denied both motions. The court then recessed the jury, brought appellant back into the courtroom, and admonished him to "act like a gentleman," speak to the court outside the panel's presence, and refrain from outbursts. The judge explained he would give appellant another chance to control his behavior and asked appellant to promise to conduct himself appropriately and to direct his requests through his attorneys. Appellant agreed.

Moments after the panel was brought back in, appellant interrupted his attorney, stating, "I cannot allow this attorney to continue, your honor. I'm sorry, I can't do it." The judge told appellant to sit down, but he continued to complain that his attorney and the district attorney had "done too much already." The panel was excused, and appellant's attorney renewed his previous motions. When the court denied them, appellant argued, "You won't even do that?" At this point, the court ordered the bailiff to get some tape and stated he wanted appellant shackled to the chair and taped. The judge told appellant he had lied to the court, and he repeated his order to bind and gag appellant. Appellant's attorney objected and again moved for a mistrial. The court reiterated its reasons for denying the motion and shackling appellant, and appellant again interrupted the court, complaining he could not breathe. Appellant removed the gag before the jury returned and interrupted as soon as his attorney's voir dire began, saying, "I fight for my freedom, your honor. My hands are a little numb, your Honor." The court again admonished appellant, this time before the jury, that he was out of order and instructed

counsel to continue, but appellant interrupted, stating the court was indicating his guilt because the tape looked like handcuffs. The court gave appellant another warning in the jury panel's presence, instructing him to speak only outside their presence. As counsel was about to resume voir dire, appellant interrupted, stating, "[t]he Court has just physically assaulted me outside the panel's presence, sir." The court warned appellant he would have to excuse the panel unless appellant controlled himself but told appellant he could leave the gag off if he behaved. As his attorney again attempted to continue, appellant said, "I cannot sit here, sir, because of what this court has just done." The court excused the panel and admonished appellant, who continued to object that he had been assaulted and complained about the tape on his hands. The court ordered appellant gagged again, brought the panel back in, and continued the voir dire. Although appellant was bound and gagged during the remainder of voir dire, he was not restrained during opening argument or any other portion of the trial. Appellant made no further interruptions.

### The Propriety of the Court's Action

In his first five points of error, appellant complains the court's actions violated (1) article one, section 19 of the Texas Constitution and article 1.05 of the Texas Code of Criminal Procedure, ensuring a right to due course of the law; (2) article one, sections 10 and 15 of the Texas Constitution and the Sixth and Fourteenth Amendments to the United States Constitution, ensuring a fair trial and effective counsel; and (3) the Fifth and Fourteenth Amendments to the United States Constitution, ensuring due process.

■ We review the trial court's decision to shackle the defendant during a trial proceeding for an abuse of discretion. *See Culverhouse v. State*, 755 S.W.2d 856, 860 (Tex. Crim.App.1988). The record must reflect the necessity for the court's actions. *See Kimithi v. State*, 546 S.W.2d 323, 326 (Tex.Crim. App.1977) (citing *Moore v. State*, 535 S.W.2d 357 (Tex.Crim.App.1976)).

The seminal case on this issue is *Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). Although in *Allen,* the defendant was removed from the courtroom rather than bound and gagged, the facts are otherwise similar to those in the present case. The defendant in *Allen* refused court-appointed counsel and was conducting voir dire when the court ordered him to limit his questioning. *See id.* at 1059, 90 S.Ct. 1057. The defendant began to argue with the judge, and when the judge instructed the court-appointed attorney to take over voir dire, the defendant interrupted and stated the attorney would not represent him. The defendant also threatened to kill the judge and tore up his attorney's file. *Id.* The judge threatened the defendant with removal, but the defendant ignored the warning. The judge eventually removed the defendant, allowed him back into the courtroom after he promised to behave, and again removed him when he interrupted the proceedings. *Id.* During the State's case-in-chief, the defendant was brought in strictly for identification, and even then he spoke abusively to the judge. He eventually returned without incident. *Id.* at 1059–60, 90 S.Ct. 1057. The Supreme Court took a strong stance against the defendant's behavior, noting the trial judge must have the discretion to ensure dignity, order, and decorum. *Id.* at 1061, 90 S.Ct. 1057. The Court listed three ways to maintain order in the court, which appellant correctly sets forth: (1) binding and gagging; (2) citing the defendant for contempt; and (3) removing the defendant from the courtroom. The Court noted that "[n]o one formula for maintaining the appropriate courtroom atmosphere will be best in all situations." *Id.* The Court then discussed the advantages and disadvantages of each option and explained that, "in some situations which we need not attempt to foresee, binding and gagging might possibly be the fairest and most reasonable way to handle a defendant who acts as Allen did here." *Id.* Moreover, the Court explained that the defendant's behavior was so extreme that either removal or total physical restraint was justified. *See id.* at 1062, 90 S.Ct. 1057.

Appellant correctly asserts that shackling is a "last resort." *See Shaw v.*

*State,* 846 S.W.2d 482, 487 (Tex.App.—Houston [14th Dist.] 1993, pet. ref'd). Appellant then contends that *Kennedy v. Cardwell,* 487 F.2d 101 (6th Cir.1973), and *Woodard v. Perrin,* 692 F.2d 220 (1st Cir.1982), require the trial court to *pursue* less restrictive means before imposing physical restraints. *Woodard,* however, does not stand for this proposition. There, the court held that a judge should *consider* less restrictive alternatives before shackling a defendant. *See* 692 F.2d at 221. Appellant also cites *Long v. State,* 823 S.W.2d 259 (Tex.Crim.App.1991), for the proposition that a trial court must set forth with specificity the reasons supporting a shackling order. However, *Long* only requires that the record clearly and affirmatively reflect the trial court's reasons for shackling, *id.* at 282, which could be evident, as it was in this case, by the defendant's repeated misbehavior. A stronger case in support of appellant's argument is *Thompson v. State,* 514 S.W.2d 275 (Tex.Crim.App. 1974), in which the court noted that if the defendant had to be handcuffed for security reasons, the trial judge *should have* the record clearly reflect the reasons. *See id.* at 278 (emphasis added) (citing *Romero v. State,* 493 S.W.2d 206 (Tex.Crim.App.1973)). *Thompson,* however, does not mandate that the court make specific findings of fact. In any event, we find the trial judge sufficiently set forth the reasons for his actions. The trial judge stated that he warned appellant about his outbursts, had to excuse the panel when appellant refused to comply with court requests to behave, and that appellant refused to cooperate with the court's requests to be a "gentleman." The judge also noted appellant failed to observe the court's rulings or comply with the court's instructions to be silent in front of the jury panel.

The Sixth Circuit requires a court to pursue less restrictive alternatives before shackling a disruptive defendant. *See Kennedy,* 487 F.2d at 111. However, the record reflects the court employed one alternative remedy, removal, which did not deter appellant's outbursts. In addition, appellant's attorney objected to the removal, and appellant likely would be complaining of the removal on appeal had the measure endured. Al-

though the court did not threaten appellant with contempt, we note that threats of contempt would undoubtedly be meaningless to a defendant facing a maximum ninety-nine year sentence. *See Allen*, 90 S.Ct. at 1061.

■ Appellant also argues the restraints seriously impacted his constitutional rights. He further asserts that: (1) certain jurors expressed concern about appellant's behavior and appearance, and that the sight of appellant in this state affected his credibility when he later testified; (2) the measure disrupted his ability to communicate with his attorney; and (3) the actions violated his right to due process. However, the jurors who expressed concern about appellant being bound and gagged were struck during voir dire. Further, appellant spoke clearly enough that the court reporter was able to take down appellant's remarks; there is no indication in the record of any statement by the appellant which was unintelligible. Appellant anticipates this matter in his brief but notes that "the fact remains that he was bound and gagged during a large portion of voir dire" and that his counsel timely objected. We fail to see the relevance of appellant's arguments in light of the fact that the record establishes his ability to communicate. Regarding appellant's due process rights, he contends the court's order to "shut up" and efforts to bind him were an affront to "the public's interest in the just administration of the law." Appellant offers no authority for this argument, and therefore, we need not address it. *See* Tex.R.App. P. 38.1(h); *Smith v. State*, 907 S.W.2d 522, 532 (Tex.Crim.App.1995).

Appellant cites a number of cases to support his argument that the trial court's actions violated the constitutional provisions set forth above. However, of the ten cases appellant cites, only two of them held the trial court abused its discretion in employing one of the measures suggested by the Supreme Court to quell a disruptive defendant. First, in *United States ex rel. Boothe v. Superintendent, Woodbourne Correctional Facility*, 506 F.Supp. 1337, 1346 (E.D.N.Y.), *rev'd on other grounds*, 656 F.2d 27 (1981), the court found that binding and gagging the defendant denied him due process. In that case, however, the trial judge wanted to isolate the defendant in a room where he could electronically monitor the proceedings. *See id.* at 1339. The federal court, reviewing the decision in a *habeas corpus* proceeding, clearly expressed its disdain for binding and shackling; however, its decision did not turn on the propriety of the shackling. Indeed, the court noted that "[*a*]*rguendo* the trial court would not have abused its discretion had it decided that the proper way to handle the emergency created by defendant's conduct was to do what he in fact did—have the petitioner bound and gagged in full view of the jury." *Id.* at 1344. The federal court found no abuse of discretion but reversed the conviction on due process grounds because the court was "impermissibly frustrated by the state's refusal to supply the necessary equipment." *Id.* at 1345.

Appellant also cites *Gammage v. State*, 630 S.W.2d 309, 317 (Tex.App.—San Antonio 1982, pet. ref'd), in which the appellate court found the trial court abused its discretion in ordering the defendant tried while in handcuffs. In *Gammage*, the defendant was cuffed after the judge heard testimony that appellant was rumored to be planning a jail escape, had refused to wear leg irons, became uncooperative when a deputy failed to wake him in time for a court appearance, and complained about the food served at the jail. *See id.* at 311–12. A sheriff who testified based his opinion of the defendant's dangerousness on the crime of which he was accused, attempted capital murder. *Id.* at 311. Other evidence included testimony that the defendant did not misbehave while in jail and had attended several hearings in court without incident. *Id.* at 311, 312. The court noted that threats or acts warranting restraint during trial must be real and not merely speculative, and a court may not restrain a defendant solely because of the character of the crime with which he is charged. *Id.* at 314–15. Finding nothing in the record to warrant cuffing the defendant, the court held the trial judge abused his discretion. *Id.* at 316–17. The court noted, however, that "exceptional circumstances" overriding a defendant's right to be tried free from physical restraints included the defendant's repeated interruptions of court proceedings. *Id.* at 313–14 (citations omitted).

The Court of Criminal Appeals has addressed the circumstances in which a court is justified in binding and shackling a defendant. In *Kimithi v. State*, 546 S.W.2d 323 (Tex.Crim.App.1977), the defendant initially informed the court he did not wish to be present during the proceedings. *See id.* at 324. The defendant had to be handcuffed to be brought into the courtroom, and after the court warned him he would be restrained if he continued his improper conduct, the defendant agreed to behave. *Id.* at 324–25. When the jury panel was brought in, however, the defendant accused the officers of assaulting him. The court ordered a medical exam, which revealed no injury, and the jury selection resumed. However, the defendant interrupted with accusations and demands for another examination. *Id.* at 325. The bailiff placed tissue in the defendant's mouth, and the judge again warned the defendant about his behavior after he removed the jury. The judge excused the panel for the day and ordered another medical examination. *Id.* On the second day, the defendant continued his outbursts and was again admonished by the court. The trial judge finally held the defendant in contempt and removed him from the courtroom. *Id.* The defendant returned after the jury selection and continued to interrupt the proceedings, despite the court's request for appropriate conduct. When the defendant's outbursts continued, the court ordered him handcuffed and gagged and eventually removed him. *Id.* The defendant did not return for the trial except to be identified, and he was always handcuffed when he appeared. *Id.* The court held that, in light of the trial court's response to the defendant's requests, its repeated warnings to the defendant, and the trial court's willingness to allow the defendant to return to the courtroom if he restrained himself, the trial court's actions were not an abuse of its discretion. *Id.* at 326.

In *Shaw v. State*, 846 S.W.2d 482 (Tex. App.—Houston [14 th Dist.] 1993, pet. ref'd), this court considered whether binding and gagging a defendant was an abuse of discretion. In *Shaw*, the trial judge denied the defendant's request to allow him to make a statement prior to closing arguments. The defendant then spoke loudly to his attorney during the State's closing argument, and the trial judge requested order, although it is not clear whether it did so immediately after the loud remarks. *See id.* at 485. The trial judge then began to admonish the defendant outside the jury's presence, twice telling the defendant to listen. When the defendant asserted the court had denied him due process, the trial judge told the bailiff to get out the duct tape and something with which to bind the defendant. *Id.* The trial judge then told the defendant it may have to bind and gag him in the jury's presence, and after the defendant argued with the trial judge, he ordered him bound and gagged. *Id.* at 485–86. We noted that physical restraint of a criminal defendant is justified in extreme circumstances such as repeated interruptions by the defendant but that the record did not indicate these or any other circumstances justifying the court's actions. *Id.* at 486–87. Even when appropriate circumstances exist, the court should only employ this method "after clear warnings to the defendant and as a last resort." *Id.* at 487. We found the trial court's actions premature and unwarranted. *Id.*

Federal cases are also instructive. In a case appellant cites, *Woodard v. Perrin*, 692 F.2d 220 (1 st Cir.1982), the trial judge ordered the defendant shackled after an extensive hearing to determine whether defendant was likely to restrain himself in the courtroom. *See id.* at 221. There, the court did not wait for an outburst from the defendant before deciding to employ this measure, given testimony regarding the defendant's dangerous conduct while in custody. *Id.* at 222. The court found that, although shackling is a severe remedy, the judge did not abuse his discretion in ordering the defendant bound for the duration of the trial. *Id.* at 221.

In the present case, appellant's trial behavior at the time he was gagged is far more egregious than that of the defendants in *Shaw* or *Woodard*, although it does not rise to the level of the conduct in *Allen* or *Kimithi.* As the Supreme Court stated in *Allen*, "[W]e find nothing unconstitutional about [removing defendant from the proceeding]. Allen's behavior was clearly of such extreme and aggravated nature as to justify either his

removal from the courtroom or his total physical restraint." 90 S.Ct. at 1062. The right to be free of restraints during a criminal proceedings, so adamantly demanded by appellant in his brief, can be lost by inappropriate behavior. We hold that appellant's behavior was so inappropriate as to warrant a loss of the constitutional right to be tried free of restraints.

We overrule points of error one through five.

## The Court's Denial of Appellant's Motion to Quash and for a Mistrial

■■■ In his sixth and seventh points of error, appellant contends the court erred in denying his motion for a mistrial and motion to quash the jury based on the binding and gagging. Appellant argues that being handcuffed to counsel table hindered his appearance, dignity, and self-respect, conveying to the jury that he was dangerous. He contends the action was not supported by the record because appellant was not physically violent or resistant.

First, appellant's motion to quash occurred after appellant's first and second outbursts in front of the jury, not at any time after he was bound and gagged. Appellant failed to preserve this matter. See TEX.R.APP. P. 33.1(a)(1)(A). We note that appellant's attorney did move to withdraw and for a mistrial after appellant was shackled; therefore, he had the opportunity to move to quash the panel but did not do so.

We review error regarding a court's ruling on a motion for mistrial for an abuse of discretion. See Kipp v. State, 876 S.W.2d 330, 339 (Tex.Crim.App.1994). If we determine the court's denial of appellant's motion was error, we reverse the trial court's judgment unless we determine the error made no contribution to the conviction. See TEX. R.APP. P. 44.2(a).

Obviously, if the trial court had granted the motion for mistrial, the parties would have begun the proceeding anew, and the trial would be delayed. The record indicates that this is exactly the result appellant intended from the moment of his first outburst, as indicated by his highly inflammatory accusations against his counsel and the judge, as well as his attempts to capitalize on the consequences of his own opprobrious conduct, by asserting (only after the judge suggested it) that he had asthma and that his hands were numb because of the shackles. Holding that the trial court erred in overruling appellant's motion for a mistrial would be directly contrary to precedent from the Supreme Court, which wrote in Allen, "Nor can the accused be permitted by his disruptive conduct indefinitely to avoid being tried on the charges brought against him. It would degrade our country and our judicial system to permit our courts to be bullied, insulted, and humiliated and their orderly progress thwarted and obstructed by defendants brought before them charged with crimes." 90 S.Ct. at 1062. As noted above, the record establishes the court did not abuse its discretion in binding and gagging the defendant during voir dire. For the same reasons, the court did not abuse its discretion in overruling the motion for mistrial.

Points of error six and seven are overruled.

## The Outcry Witness Rule

■■ In his eighth point of error, appellant asserts the trial court erred in admitting the testimony of Lisa Holcombe, the interviewer with the Children's Assessment Center, as an "outcry witness." Generally, an out of court statement is not admissible to prove of the truth of the matter asserted. See TEX.R.CRIM. EVID. 801(d), 802. The legislature has created an exception, however, for statements of child abuse victims made by the victim to the first person over the age of eighteen to whom the victim made a statement about the offense. See TEX.CODE CRIM. PROC. ANN. art. 38.072 (Vernon Supp.1998). The statement made "must be more than words which give a general allusion that something in the area of child abuse was going on." Garcia v. State, 792 S.W.2d 88, 91 (Tex.Crim.App.1990). Rather, the statement must describe the offense in some discernible manner. Id.

As noted above, Holcombe interviewed the complainant eight months after the incident. On the day of the incident, however, the

complainant answered two of her mother's questions about the incident and told Mrs. Miller about the attempted penetration. Appellant asserts Holcombe therefore was not an "outcry witness" because she was not the first person with whom the complainant discussed the incident.

First, appellant never urged at trial that Mrs. Miller was the first person to whom the complainant made a statement regarding the offense. As such, this contention is not properly preserved. *See* TEX.R.APP. P. 33.1(a)(1)(A). Appellant did contend, however, that Quintanilla was the first person to whom the complainant reported the incident. Therefore, we only consider whether Quintanilla, rather than Holcombe, was the outcry witness.

The complainant testified that she did not tell her mother appellant tried to put his penis inside her vagina. Holcombe testified the complainant told her appellant "put his private into her vaginal area" and that the complainant identified the meaning of "private" by pointing to the genital area of an anatomically correct doll. The complainant reiterated this testimony during trial. Quintanilla testified that, following the incident, she asked her daughter if appellant pulled his pants down. Quintanilla also asked the complainant if appellant pulled his underwear down. The complainant responded "yes" to both questions but did not respond to further questioning by Quintanilla.

In *Hayden v. State*, 928 S.W.2d 229 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd), the victim complained of sexual abuse to her school counselor. *See id.* at 230–31. The defendant complained this statement precluded the admissibility of her statement to a CPS caseworker, which apparently followed the statement to the counselor. *Id.* The court noted that the record failed to show the extent of the victim's conversation with her school counselor, as there was no evidence the victim described the details of the sexual abuse. *Id.* at 231. As such, the court did not abuse its discretion in allowing the caseworker to testify regarding the victim's complaint. *Id.* In *Turner v. State*, 924 S.W.2d 180 (Tex.App.—Eastland 1996, pet. ref'd), the defendant was charged with penetrating the victim's vagina with his penis. The victim told her counselor the defendant penetrated her vagina with his finger; however, she told a police officer the defendant penetrated her vagina with his penis. *See id.* at 183. The court found the officer was the first person over the age of 18 whom the victim told about the offense as alleged in the indictment, and that therefore, he was an appropriate outcry witness. *Id.*

In the present case, appellant was charged with causing his sexual organ to contact the complainant's sexual organ. The record is clear that the complainant's mother did not ask the complainant whether penetration occured and that the complainant did not tell her mother sexual penetration occurred. The complainant did, however, tell Holcombe that appellant caused his penis to contact her vagina. As such, Holcombe was the first person the complainant told about the offense as alleged in the indictment. As such, the court correctly found Holcombe to be the outcry witness pursuant to Texas Code of Criminal Procedure § 38.072.

Point of error eight is overruled.

### Statement of Identity as a Hearsay Exception

■ In his ninth and final point of error, appellant contends the testimony of Dr. Williams was hearsay and should not have been admitted pursuant to Texas Rule of Criminal Evidence 803(4). As noted above, Dr. Williams was the physician who examined the complainant after her interview with Holcombe. Dr. Williams testified she has examined and treated many sexually abused children. She asked the complainant questions about sexual contact while she took the complainant's history and physical. The complainant told Williams her stepfather touched her "private" and breasts with his finger and hand and that he put his finger and "private" into her private part. Williams also testified the history and physical is the most important part of an examination and is crucial in arriving at an appropriate diagnosis.

Rule 803(4) provides an exception to the hearsay exclusion for statements made for

purposes of medical diagnosis or treatment and describing medical history, past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment. *See* Tex.R.Crim. Evid. 803(4). Surprisingly, few cases discuss this rule's application in the context of sexual abuse of a child. Those which do, however, have found that a child's statement of identity of the abuser is admissible. *See Fleming v. State,* 819 S.W.2d 237, 247 (Tex.App.—Austin 1991, pet. ref'd); *Tissier v. State,* 792 S.W.2d 120, 125 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd); *see also Macias v. State,* 776 S.W.2d 255, 259 (Tex.App.—San Antonio 1989, pet. ref'd). These cases all relied on a federal case, *United States v. Renville,* 779 F.2d 430 (8th Cir.1985). In *Renville,* the victim told an examining physician of several instances of anal intercourse and oral sexual contact performed by the defendant. *See id.* at 432. The court, interpreting Federal Rule of Evidence 803(4),[1] found the trial court did not err in admitting statements of the identity of the defendant. *See Renville,* 779 F.2d. at 438–39.

Appellant contends *Renville* and the Texas cases relying upon it require the statement identifying the perpetrator be reasonably pertinent to the treatment and that the child understand the need to tell the truth. He contends that the record is devoid of evidence establishing the complainant's understanding of the physician's role, and that this understanding motivates the child to tell the truth. Appellant is correct that the *Renville* opinion stressed that the child needed to appreciate the importance of giving correct information to the caregiver, *see id.* at 438, and that Dr. Williams did not testify that she discussed the importance of this matter with the complainant. However, such proof was absent in *Fleming,* in which the court noted the trial judge made no specific inquiry to determine whether the child appreciated the need to be truthful but that, nonetheless, the record was sufficient to support this conclusion. *See Fleming,* 819 S.W.2d at 247. In the present case, there was evidence of the

complainant's understanding of the need to tell the truth: first, Lisa Holcombe testified that she determined the complainant knew the difference between telling the truth and telling a lie; second, Dr. Williams testified the complainant's statements were consistent with the injuries found, which supports the general credibility of the complainant's statement. As such, there is evidence the complainant understood the need to tell the truth, and Dr. William's testimony regarding the importance of the history and physical is evidence the statement was reasonably pertinent to the treatment of the complainant.

Point of error nine is overruled. We affirm the trial court's judgment.

---

1. This Rule is identical to Texas Rule of Criminal   Evidence 803(4).