# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00176-CR
## NO. 03-01-00177-CR

**James Gibson Moore, III, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 26TH JUDICIAL DISTRICT NOS. 00-187-K26 & 00-188-K26, HONORABLE BILLY RAY STUBBLEFIELD, JUDGE PRESIDING**

Appellant James Gibson Moore, III was convicted by a jury on two counts of indecency with a child and one count of aggravated sexual assault. Appellant's two daughters, aged thirteen and fifteen at the time of trial, were the victims of these offenses. The jury assessed punishment at ten years for each conviction for indecency with a child, and thirty years for the conviction for aggravated sexual assault. Appellant raises seven points of error. We affirm the judgments.

## BACKGROUND

Appellant was indicted on eight counts; he was acquitted on five. Appellant was convicted for one count of indecency with a child against his younger daughter. This offense occurred on May 14, 1996. He was convicted for two counts involving his older daughter. The

offense of indecency with a child occurred on September 21, 1992; the aggravated sexual assault occurred on January 7, 2000. During the guilt/innocence phase of the trial, testimony describing these incidents was given by the two victims, a clinical social worker who had been meeting with the girls in therapy sessions, and appellant.

The complaining witnesses testified to various incidents of inappropriate behavior by their father during the times they were with him at his house.[1] Examples of conduct described as inappropriate were that appellant would go to the bathroom in front of his daughters, walk around in his underwear, and sleep with them. Appellant's daughters stated that when their father slept with them, he would cuddle and wrap his legs around theirs, pressing himself against them. There was also testimony that appellant videotaped his daughters in the shower with their stepmother.

Appellant's younger daughter testified that, on one particular occasion, appellant sat down in his recliner and put her on his lap. He then reached under her clothes and proceeded to rub her vagina for a number of minutes. In a separate instance, the elder daughter testified that appellant required her to shower with him, even though she objected. Once in the shower, appellant made her wash his body. When she did not wash his penis, appellant took her hand and required her to do so. She also testified that two weeks after this shower, appellant made her take a bath with him where he touched his penis to her vagina. Without reference to a specific incident, she stated that her father touched her breasts and vagina on several occasions.

Although much time had passed since the two acts leading to indecency with a child convictions had occurred, neither daughter made an outcry until after the January 7, 2000 aggravated

---

[1] The victims did not live with their father.

sexual assault occurred.  Both appellant and his older daughter, the victim in this particular incident, testified as to the occurrence.  She stated that she was in the bedroom watching television when her father came into the room and got in bed with her, wearing only a pair of boxer shorts.  While laying in bed, appellant put his finger in her mouth.  After this occurred, she attempted to leave the room, but because the door was locked, she laid back onto the bed.  Appellant then forced her to perform oral sex on him.  Appellant's rendition of the incident is somewhat different.  He claims that he and his daughter were watching television while lying in bed as they often did.  He explained that he had been drinking, and because of his drunken state, he said that he began sucking his daughter's finger.  Then he claims that she voluntarily grabbed his penis and touched her mouth to it.  After this oral contact, which he said lasted only momentarily, she jerked her head up and left the room.  He admits this conduct occurred and that it was wrong, but he disputes the State's contention that he *forced* her to do anything.

## DISCUSSION

### *Medical Treatment Exception to the Hearsay Rule*

In his first point of error, appellant argues that the trial court erred in admitting hearsay testimony in which a social worker recounted statements the victims made to her during therapy sessions.  Some of these statements include the victims' description of the offenses.  After appellant objected on hearsay grounds, the State succeeded in getting these statements admitted under the medical purposes and treatment exception to the hearsay rule.  That exception allows for admission of the following hearsay statements:

3

**(4) Statements for Purposes of Medical Diagnosis or Treatment.** Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

Tex. R. Evid. 803(4). Appellant challenges the application of Rule 803(4) because he claims that the witness is not part of the medical profession and thus, any statements made to her could not have been made for purposes of medical diagnosis or treatment.

The witness, Judy Cardinale, began meeting with the victims for therapy sessions a short time after their initial outcry. Since their first meeting, Cardinale met with the victims about once or twice per week up to the time of appellant's trial. The girls participated in individual and group therapy. In sum, Cardinale met with the girls for about forty therapy sessions, thirteen or fourteen of which were individual meetings.

Cardinale's testimony included a general discussion about the types of characteristics and symptoms displayed by many young children who have been the victims of sexual assault. She also testified about her observations and opinions concerning appellant's daughters. Part of her testimony, which was given without objection, concerned each girl's symptoms and treatment. However, Cardinale's testimony repeating statements made by each victim, during their therapy sessions, about specific instances of abuse, elicited appellant's hearsay objection. The State maintains that these statements, describing the specific acts of abuse and identifying appellant as the aggressor, are within the scope of Rule 803(4) because they were made to a licensed therapist in the course of her diagnosis and treatment of the victims.

4

The medical treatment exception to the hearsay rule is based on the assumption that the patient appreciates that the effectiveness of the treatment may depend on the accuracy of the information provided to the physician. *Fleming v. State*, 819 S.W.2d 237, 247 (Tex. App.—Austin 1991, pet. ref'd). In applying the medical treatment exception to cases involving child abuse, courts have allowed the victim's statements concerning the identity of the attacker to be admitted because treatment of child abuse must begin with removing the child from the abusive setting. *Id*.; *see also Beheler v. State*, 3 S.W.3d 182, 189 (Tex. App.—Fort Worth 1999, pet. ref'd)*; Molina v. State*, 971 S.W.2d 676, 683-84 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd). While appellant does contend that the statements identifying him were inadmissable hearsay, the crux of his appeal is that the statements were made to a person who is not a member of the medical profession and who lacks medical training.

In every case we have found, save two, in which statements were introduced using Rule 803(4), the witness would have satisfied the Legislature's definition of a physician or health care provider as defined in the medical malpractice statute.[2] *See Gregory v. State*, 56 S.W.3d 164 (Tex. App.—Houston [14th Dist.] 2001, no pet. h.) (registered nurse allowed to testify about statements

---

[2] The Medical Liability and Insurance Improvement Act contains the following definitions:

"Physician" means a person licensed to practice medicine in this state.

"Health care provider" means any person, partnership, professional association, corporation, facility, or institution duly licensed or chartered by the State of Texas to provide health care as a registered nurse, hospital, dentist, podiatrist, pharmacist, or nursing home, or an officer, employee, or agent thereof acting in the course and scope of his employment.

Tex. Rev. Civ. Stat. Ann. art. 4590i, §1.03 (West Supp. 2002).

5

made and symptoms of child abuse victim); *Beheler v. State*, 3 S.W.3d 182 (Tex. App.—Ft. Worth 1999, pet. ref'd) (sexual assault nurse examiner at hospital testified about interview with patient prior to conducting physical exam); *Molina v. State*, 971 S.W.2d 676 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd) (physician testified to statements made by victim during physical examination); *Torres v. State*, 807 S.W.2d 884 (Tex. App.—Corpus Christi 1991, pet. ref'd) (nurse allowed to testify under Rule 803(4) about victim's answers to questions asked during collection of samples for "rape kit"); *Fleming v. State*, 819 S.W.2d 237 (Tex. App.—Austin 1991, pet. ref'd) (physician and mental health therapist testified about victim's statements). *But see Puderbaugh v. State*, 31 S.W.3d 683 (Tex. App.—Beaumont 2000, pet. ref'd) (clinical social worker who practiced with physicians in a family office practice testified about statements made during therapy by a victim of child abuse); *Gohring v. State,* 967 S.W.2d 459 (Tex. App.—Beaumont 1998, no pet.) (therapist, under supervision of licensed psychologist, could testify about victim's statements).[3]

We recognize that some courts have allowed therapists to testify about statements made to them during the course of individual and group therapy sessions. However, to ensure that the medical treatment exception's assumption that patients seeking medical care will be honest and truthful in relaying symptoms in order to obtain proper and effective treatment remains intact, the offered witness's qualifications must be shown to conform to the rule. *See Fleming*, 819 S.W.2d at 247. If a witness's testimony fails to meet Rule 803(4)'s criteria requiring that the statements be

---

[3]   The Beaumont court of appeals found that the medical care component of Rule 803(4) was satisfied because the clinical social worker practiced with physicians and the patient/victim had been referred to the social worker for treatment by her family practitioner.

made to medical personnel in the course of diagnosis and treatment, then that testimony cannot overcome the hearsay rule.

In the present case, Cardinale testified about statements made to her by appellant's daughters. She related, with some detail, what each girl had told her describing various instances of abuse. Although Cardinale's testimony describing what each victim told her about the specific offenses for which appellant was convicted was brief, it accurately repeated the testimony given by each victim. In addition to the specific offenses for which appellant was convicted, Cardinale testified that other instances of abuse had occurred with some frequency. While this Court has recognized that such statements may be admissible as having been made for purposes of treatment, *see Fleming*, 819 S.W.2d at 247, we do not believe that the State carried its burden in this case for admitting Cardinale's testimony.

Cardinale's qualifications, which perhaps could establish her connection with the medical profession, are not well identified in the record. She testified that she is licensed by the State of Texas as a clinical social worker and an advanced clinical practitioner. She also stated that she is licensed as a psychotherapist, but is not licensed as a psychiatrist or psychologist. The State did not elicit testimony to explain how a psychotherapist differs from a psychiatrist or psychologist and exactly what type of training is required to become a licensed psychotherapist. Furthermore, Cardinale testified that she did not possess any medical degrees and could not prescribe medicine. However, she did testify that she provides a medical diagnosis to each of her clients using the Diagnostic and Statistical Manual. The record does not contain any testimony explaining how

7

Cardinale uses this Diagnostic and Statistical Manual or what type of training she has received in order to provide a medical diagnosis.

Although the State proved that Cardinale has received her master's degree in social work and is licensed by the State as a clinical social worker, the State failed to present proof of her qualifications for licensure. The State did not present evidence concerning the requirements for licensure and whether, as a social worker who provided medical diagnoses, Cardinale received special training, was answerable to a board which governed licensed social workers, or had to meet any advanced continuing education requirements. These factors tend to indicate membership in a profession. Because the State did not establish any of these with respect to Cardinale's occupation, it failed to meet its burden under Rule 803(4). Because the record does not have sufficient information for us to determine that Cardinale has received medical training and can qualify as a member of the medical profession, and because Rule 803(4) clearly requires the statements by the declarant be made for purposes of medical diagnosis or treatment, we hold that the trial court erred in admitting Cardinale's testimony over appellant's objection.

***Harm Analysis***

Error in the admission of evidence is subject to a harm analysis under Rule 44.2(b) of the rules of appellate procedure. *See Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). A violation of the evidentiary rules that results in the erroneous admission of evidence is nonconstitutional error. *See King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997); *Tate v. State*, 98 S.W.2d 887, 890 (Tex. App.—Austin 1999, pet. ref'd). Any nonconstitutional error "that does not affect substantial rights must be disregarded." Tex. R. App. P. 44.2(b). A substantial right

8

is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *See King*, 953 S.W.2d at 271. A criminal conviction should not be overturned for nonconstitutional error if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but slight effect. *See Johnson,* 967 S.W.2d at 417. It is well-established that the improper admission of evidence does not constitute reversible error if the same facts are proved by other properly admitted evidence. *See Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999) (holding that any error in the admission of hearsay testimony was harmless in light of other properly admitted evidence proving the same fact).

Appellant contends that the erroneous admission of Cardinale's testimony caused harm because it was the only evidence corroborating the victim's testimony about the incident for which appellant was convicted of aggravated sexual assault. But this evidence did not require corroboration because *both* the victim and *appellant* testified to the incident. Although appellant claims that he did not force his daughter to perform any sexual acts, the victim testified to the contrary. Furthermore, Cardinale's testimony merely summarized, in a single sentence, a factual depiction of the incident in question. Cardinale did not testify in any detail whatsoever as to whether the act was forced or voluntary. Therefore, we find the admission of her testimony was harmless. Accordingly, we overrule appellant's first issue.

### Other Points of Error

In his second and third points of error, appellant contends that the trial court erred in proceeding with the trial over his objection after a juror became ill. Appellant claims that by continuing the trial without a full jury panel, the trial court denied him his constitutional and statutory

9

rights. Tex. Const. art. XIII, § 5; Tex. Code Crim. Proc. Ann. art. 36.29(a) (West Supp. 2002). On the fifth day of the jury trial, a juror reported to the court that he was suffering from a severe gastrointestinal illness and was too weak to come to court. Although appellant objected and requested the trial be postponed, the trial court chose to proceed under article 36.29, which allows a trial to proceed with fewer than twelve jurors if a panel member becomes disabled. *See* Tex. Code Crim. Proc. Ann. art. 36.29(a).[4]

The court of criminal appeals has interpreted "disabled" as involving physical illness, mental condition, or emotional state which hinders one's ability to perform one's duties as a juror. *Landrum v. State*, 788 S.W.2d 577, 579 (Tex. Crim. App. 1990). The term disabled can also mean any condition that inhibits the juror from fully and fairly performing the functions of a juror. *Griffin v. State*, 486 S.W.2d 948, 951 (Tex. Crim. App. 1972). The determination as to whether a juror is disabled is within the discretion of the trial court. *Brooks v. State*, 990 S.W.2d 278, 286 (Tex. Crim. App. 1999). Absent an abuse of that discretion, no reversible error will be found. *Id.*

---

[4]   **Art. 36.29. If a Juror Dies or Becomes Disabled**

(a)   Not less than twelve jurors can render and return a verdict in a felony case. It must be concurred in by each juror and signed by the foreman. Except as provided in Subsection (b), however, after the trial of any felony case begins and a juror dies or, as determined by the judge, becomes disabled from sitting at any time before the charge of the court is read to the jury, the remainder of the jury shall have the power to render the verdict; but when the verdict shall be rendered by less than the whole number, it shall be signed by every member of the jury concurring in it.

Appellant contends that a stomach ailment is insufficient to render a juror disabled because such an illness is temporary. However, we note that other courts have found that jurors who complained of other *temporary* illnesses that impaired their ability to perform the functions of a juror were properly determined by the trial court to be disabled. *See Hughes v. State*, 787 S.W.2d 193, 195 (Tex. App.—Corpus Christi 1990, writ ref'd) (juror excused after complaining of nausea, headaches, and vomiting); *Allen v. State*, 536 S.W.2d 364, 366-67 (Tex. Crim. App. 1976) (juror properly determined to be disabled after having been diagnosed with influenza). A juror's inability to come to the courthouse due to a severe gastrointestinal ailment provides some evidence of the requisite incapacity from performing the duties assigned to that juror that the trial court may consider in making a determination of disability. Although a stomach ailment is only temporary, it remains within the trial court's discretion to determine whether this juror had become disabled. The situation here is indistinguishable from that in *Hughe*s and *Allen*. We therefore cannot say that the trial court abused its discretion in determining that this juror's ailment rendered him disabled. Points of error two and three are overruled.

Appellant's fourth issue on appeal is that the trial court erred in overruling his objection to the testimony of Paul Szendrey discussing whether tapes seized from appellant contained pornography. Szendrey testified that he was the supervisor of the property and evidence section of the Williamson County Sheriff's Department. On cross examination, Szendrey was asked whether, as part of his job, he had viewed the approximately twenty videotapes taken from appellant. Szendrey responded that he had viewed the tapes. Appellant then asked, referring to a particular videotape, "Any reference to any nudity at all was solely contained on this particular video tape, correct?"

Szendrey answered in the affirmative. Immediately thereafter, on redirect examination, the State asked, "Sir, there were some tapes of other pornographic images in those beta and video tapes of adults, wasn't there?" After appellant's objection, the State responded that appellant had opened the door for this testimony by his previous question. The trial court overruled the objection.

Appellant claims that this was error because his questioning of Szendrey was confined to an inquiry of whether there were naked images of his daughters on one of the tapes. Appellant contends that the State's question improperly sought admission of immaterial extraneous bad acts. Tex. R. Evid. 404(b). The State responds that appellant's question was broader in scope than appellant now claims and that it resulted in giving the jury a false impression. When a witness takes the stand and leaves a false impression, the witness "opens the door" to the admission of evidence that would correct the false impression. *Murphy v. State*, 587 S.W.2d 718, 722 (Tex. Crim. App. 1979). In determining whether a false impression was created, however, we must examine the testimony in context, rather than in a vacuum. *Prescott v. State*, 744 S.W.2d 128, 131 (Tex. Crim. App. 1988).

Appellant's question did not specifically reference *which persons* were alleged to have appeared on the videotape. The State argues that Szendrey's answer to appellant's question implied that only one of the approximately twenty videotapes contained pornography. Based on the entirety of Szendrey's testimony, we believe that the impression received from his answer to appellant's question was that only one tape contained nudity. Appellant did not make it clear that he was asking Szendrey solely about naked pictures or videos of the *victims*. Because a false impression was created as to whether only one of the twenty videotapes contained pornographic images, the State

was entitled to ask a follow-up question to correct that impression. We overrule appellant's fourth point of error.

Appellant next complains that the trial court erred in not defining "caused" in the jury charge. At the conclusion of the trial, the charge read to the jury inquired whether the defendant *caused* his daughter to have oral contact with his sexual organ. Appellant's contention was that because the victim acted voluntarily, as opposed to being forced, that he had not *caused* her conduct. Accordingly, he requested that the court define the word "caused" to accommodate his defense. The trial court denied his request.

If a phrase, term, or word is statutorily defined, the trial court must submit the statutory definition to the jury. *Alexander v. State*, 906 S.W.2d 107, 111 (Tex. App.—Dallas 1999, no pet.); *Willis v. State*, 802 S.W.2d 337, 342 (Tex. App.—Dallas 1990, pet. ref'd). Words that are not statutorily defined are to be given their common, ordinary, or usual meaning. *Roise v. State*, 7 S.W.3d 225, 242 (Tex. App.—Austin 1999, pet. ref'd). No specific instruction is required for these words in the jury charge. *Martinez v. State*, 924 S.W.2d 693, 698 (Tex. Crim. App. 1996) (no definitional instruction was required for word "presence" as it had not been administratively or legislatively defined). Jurors are presumed to know and apply the common and ordinary meaning of words. *Cuevas v. State*, 742 S.W.2d 331, 346 (Tex. Crim. App. 1987). Only if the word or term does not have a common meaning that the jurors can be fairly presumed to know and apply must a definition be supplied. *Holmes v. State*, 962 S.W.2d 663, 674 (Tex. App.—Waco 1998, pet. ref'd, untimely filed).

Although appellant acknowledges that "caused" is not defined in the Penal Code, he believes that the circumstances of this case warrant a specific definition in the jury charge. That belief rests on the fact that his defense to the aggravated sexual assault charge is that the act was not *forced* or *caused* by him. In support of his argument, appellant relies on *Whaley v. State*, 717 S.W.2d 26, 31 (Tex. Crim. App. 1986), for the proposition that a definition of a word, which would normally remain undefined in the charge, may be required in certain instances depending on the facts of the case. In *Whaley*, the court held that, although originally an undefined term, "constructive transfer" had acquired a particular meaning requiring a definition in the jury charge. We find appellant's reliance on *Whaley* unpersuasive.

This case differs from *Whaley* because "constructive transfer" is a term of art found within the statutory definition of "deliver" as it pertains to controlled substances. As such, it assumes a particular meaning when used within that definition.[5] "Caused" has not acquired a particular meaning when used in conjunction with an aggravated sexual assault charge. "Caused" is not a term of art. Its ordinary and common meaning controlled its usage and the jury is presumed to be able to apply that meaning. The trial court did not err in refusing to include a definition of "caused" in the jury charge. We overrule appellant's fifth point of error.

---

[5]     In deciding *Whaley v. State*, 717 S.W.2d 26, 31 (Tex. Crim. App. 1986), the court of criminal appeals discussed a previous case in which it chose to follow other courts that had defined "constructive transfer." *See Rasmussen v. State*, 608 S.W.2d 205, 209-10 (Tex. Crim. App. 1980) (adopting *State v. Ellis*, 239 S.E.2d 670 (W.Va. 1977); *State v. Guyott*, 239 N.W.2d 781 (Neb. 1976)). Therefore, by the time *Whaley* was decided, two years after the court had originally defined "constructive transfer" in *Rasmussen*, that term had a recognized particular meaning. The term "caused" lacks a similar pedigree.

In his sixth and seventh points of error, appellant contends the trial court erred in denying him a hearing under Texas Rule of Evidence 104(b) to determine the preliminary question of the admissibility of extraneous offenses offered by two witnesses during the punishment phase of the trial. In a bench conference, prior to beginning the direct examination of the first witness, the State informed the court that it had given proper notice of its intent to call these witnesses. Tex. Code Crim. Proc. Ann. art. 37.07, § 3(g) (West Supp. 2002). In addition, this discussion informed the court of the nature of the testimony.

The trial court has the responsibility of determining the threshold admissibility of extraneous offense evidence at the punishment phase; that is, the court must make an initial determination at the proffer of the evidence that a jury could reasonably find beyond a reasonable doubt that the defendant committed the extraneous offense. *See Mitchell v. State*, 931 S.W.2d 950, 954 (Tex. Crim. App. 1996); *see also Harrell v. State*, 884 S.W.2d 154, 160 (Tex. Crim. App. 1994). Appellant cites no authority to support his claim that, under rule 104(b), this initial determination must be made by the court following a hearing as opposed to some other form of preliminary review.

While the trial court made no express ruling on the admissibility of the extraneous offenses, its denial of appellant's request for a hearing following the State's proffer constitutes an implied ruling of admissibility. Further, the trial court gave the proper jury instruction on burden of proof of extraneous offenses, and appellant does not contend that the State failed to prove the extraneous offenses beyond a reasonable doubt. An appellate court reviews the trial court's decision to admit extraneous offense evidence under the abuse of discretion standard. *See Mitchell*, 931 S.W.2d at 953. We hold that the trial court's refusal to hold a hearing outside the presence of the

15

jury on the admissibility of extraneous offense evidence resulted in no harm to appellant. No abuse of discretion is shown in the trial court's admission of evidence of extraneous offenses. Appellant's sixth and seventh points of error are overruled.

## CONCLUSION

We hold that the admission of Cardinale's testimony under the medical treatment exception to the hearsay rule was error because the State failed to show that its witness was qualified as a member of the medical profession. However, because the admission of her testimony did not result in harm, appellant's conviction does not warrant reversal. Appellant's remaining points of error are overruled in accordance with the discussion above. The judgments of conviction are affirmed.

_____

Mack Kidd, Justice

Before Justices Kidd, Yeakel and Patterson: Opinion by Justice Kidd;
    Concurring Opinion by Justice Patterson

Affirmed

Filed:  March 28, 2002

Publish