IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-04-00209-CR

 

JIMMY HOWARD FOXWORTH,

                                                                      Appellant

 v.

 

The State of Texas,

                                                                      Appellee

 

 

 



From the 217th District Court

Angelina County, Texas

Trial Court No. 24162

 



MEMORANDUM  Opinion



 

Raising nine issues, Appellant Jimmy Foxworth
appeals his conviction of aggravated sexual assault and sixty-year sentence. 
We will affirm.

Background

          Foxworth was indicted for the felony
offense of intentionally or knowingly causing the penetration of the sexual
organ of Jane Doe (a pseudonym), a child under the age of fourteen and not his
spouse, with his finger.  See Tex.
Pen. Code Ann. § 22.021(a)(1)(B)(i) (Vernon 2003 & Supp. 2004-05).  Jane was sleeping on the living room floor on the
night of October 19, 2003.  On two occasions that night, Foxworth got down on
the floor beside her, placed his hand inside her panties, vigorously rubbed her
vagina, and moved his fingers in and out of her vagina.  Foxworth’s actions
caused her pain but she pretended to be asleep out of fear.  In between the two
occasions, Foxworth left Jane to answer the phone.

          During the molestation, Jane’s mother (“Mother”)
was on the phone, and after Foxworth went to his bedroom and Mother got off the
phone to go to the bathroom, Jane rushed into the bathroom to tell her mother
what Foxworth had done.  Mother confronted Foxworth, who denied the offense.  Mother
then got Jane and confronted him again with Jane at her side, and Foxworth again
denied the offense, then went outside and got in his truck.  Mother telephoned
her friend and neighbor, Cricket, who came over quickly, and Jane told Cricket
what had happened.  Soon thereafter, Foxworth came back in the house, kneeled
down in front of Jane, and said to her in tears, “If Daddy did this, I’m
sorry.”  He then went outside again.

          Cricket suggested that Mother take
Jane to the hospital for an examination, which Mother did.  Bonnie Cone, a
nurse and a sexual assault nurse examiner (SANE), examined Jane.  She testified
about what Jane told her had happened, and this version was substantially
identical to Jane’s trial testimony.  Nurse Cone graphically described the
results of her examination and also drew a chalkboard picture of the injury.

          Mother and Cricket gave testimony that
was substantially identical to Jane’s testimony.  Foxworth does not challenge
the sufficiency of the evidence, and he testified only in the punishment phase.




Notice of Extraneous Offenses

          Foxworth’s first issue complains that
the trial court erred in denying his motion to limit the State’s use of
extraneous offenses because of the State’s allegedly untimely notice.  The
trial court had previously ordered the State to give reasonable pretrial notice
of its intent to use extraneous offense evidence and prior convictions.  On May
10, 2004, the State filed its “State’s Notice to Defendant Pursuant to Rules
404 & 609 of the Texas Rules of Evidence and §37.07 of the Code of Criminal
Procedure,” and delivered the notice to Foxworth’s trial attorney.  Jury
selection began two day later, on May 12.  According to the State, several
hours before jury selection began, the State filed its “State’s First Amended
Notice to Defendant Pursuant to Rules 404 & 609 of the Texas Rules of
Evidence and §37.07 of the Code of Criminal Procedure.”  Foxworth’s trial attorney
admitted to receiving this amended notice that day.  The amended notice added
three extraneous acts to the original nine:  (1) that Foxworth had threatened
to harm Jane and Mother if he ever got out of prison; (2) that Foxworth abused
and killed numerous cats; and (3) that he physically abused his ex-wife.

          At a May 17 motions hearing,
Foxworth’s trial attorney asked the trial court to limit the State’s use of
extraneous offense evidence, arguing that the State’s alleged delay in
providing notice caused him to be unable to question potential jurors on the
extraneous offenses.  Finding that Foxworth could not demonstrate any harm from
the allegedly untimely notice, the trial court denied Foxworth’s motion.

At trial, the State presented evidence that Foxworth
relinquished his parental rights to his youngest son, stole a car, and kept
Jane’s dog from her by having it locked up in the house for three days.  Both
the State and Foxworth elicited testimony that Foxworth regularly smoked
marihuana and that Foxworth was smoking marihuana on the night he sexually
assaulted Jane.  As for the three additional extraneous offenses, it was
Foxworth who elicited testimony from Jane and Mother about the alleged threats,
and no evidence of abusing or killing cats was presented at all.  In the
guilt-innocence phase, the State elicited testimony from Foxworth that his
ex-wife had obtained a protective order against him, but the State did not ask
him about specific instances of violent behavior toward his ex-wife.

Foxworth did not object on the
ground that the State’s notice was untimely when the evidence in question was
offered.[1] 
Therefore, he has not preserved his first issue for appellate review.  See
Tex. R. Evid. 103(a)(1); Chambers
v. State, 903 S.W.2d 21, 31-32 (Tex. Crim. App. 1995); Grider v. State,
69 S.W.3d 681, 686 (Tex. App.—Texarkana 2002, no pet.); Gregory v. State,
56 S.W.3d 164, 175-76 (Tex. App.—Houston [14th Dist.] 2001, pet. dism’d,
improvidently granted); see also Martinez v. State, 98 S.W.3d 189, 193
(Tex. Crim. App. 2003) (pretrial motion in limine does not preserve error).  We
overrule his first issue.

Opinion Testimony

          Foxworth’s third and fourth issues
complain about the expert opinion testimony of State’s witnesses Melissa McVey,
a forensic interviewer, and Cone, the SANE nurse.  Foxworth complains of
McVey’s testimony that children are generally reluctant to talk about sexual
abuse by a family or household member, that it is common for a child’s mother
to not always initially believe the child’s report of sexual abuse, and that
the child usually does not resist the sexual abuse because the perpetrator is
someone the child cares about and the child is embarrassed.            Cone
testified that child victims of sexual assault commonly do not resist out of
fear of harm to themselves or a family member.

Rule of Evidence 702 governs the admissibility
of expert testimony.  See Tex.
R.  Evid. 702; Gammill v. Jack Williams Chevrolet, Inc., 972
S.W.2d 713, 718 (Tex. 1998); E.I. du Pont de Nemours & Co. v. Robinson,
923 S.W.2d 549, 554 (Tex. 1995).  Once the opposing party objects to proffered
expert testimony, the proponent of the witness’s testimony bears the burden of
demonstrating its admissibility.  See Guadalupe-Blanco River Auth. v. Kraft, 77 S.W.3d 805, 807 (Tex. 2002); Robinson, 923 S.W.2d at 557. 
To be admissible, the proponent must demonstrate: (1) that the expert is
qualified; and (2) that the expert’s testimony is relevant and reliable.  See
Helena Chem. Co. v. Wilkins, 47 S.W.3d 486, 499 (Tex. 2001).

          These are threshold issues that the
trial court determines under Rule of Evidence 104(a) before admitting the
testimony.  See Tex. R. Evid.
104(a); Gammill, 972 S.W.2d at 718.  In this regard, the trial court
acts as a “gatekeeper.”  See Sexton v. State, 93 S.W.3d 96, 99 (Tex. Crim. App. 2002); Gammill, 972 S.W.2d at 726.  We review the trial court’s
determination under an abuse-of-discretion standard.  Sexton, 93 S.W.3d
at 99; see also Kraft, 77 S.W.3d at 807.

          In his third and fourth issues,
Foxworth’s objections in the trial court and his complaint on appeal is that
McVey and Cone were not qualified to give expert opinion testimony about issues
of family dynamics and the behavior of sexually abused children.  Under Rule
702, an expert is qualified to give an opinion “by knowledge, skill,
experience, training, or education.”  Tex.
R. Evid. 702.  No rigid formula exists for determining whether a
particular witness is qualified to testify as an expert.  Malone v. State,
163 S.W.3d 785, 793 (Tex. App.—Texarkana 2005, pet. filed); Gonzales v.
State, 4 S.W.3d 406, 417 (Tex. App.—Waco 1999, no pet.).  Whether a witness
offered as an expert possesses the required qualifications rests largely with
the trial court’s discretion, and absent a clear abuse of that discretion, the
trial court’s decision to admit or exclude testimony will not be disturbed.  Wyatt
v. State, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000).  If the trial court’s
ruling is within the zone of reasonable disagreement, then the trial court’s
ruling will be upheld.  Sexton, 93 S.W.3d at 99.

          McVey was a forensic interviewer and
case manager at the Angelina Alliance for Children and worked on a
multi-disciplinary team on child abuse investigations.  Her forensic
interviewing training and education was attending four clinics, and she
attended peer review quarterly where the interviewers watch each other’s
videotaped interviews and critique each other.  McVey had attended many other
conferences and seminars on understanding and treating child sexual abuse.  She
has a bachelor’s degree in criminal justice and was currently working on a
master’s degree.  She previously worked for the Texas Department of Protective
and Regulatory Services (Child Protective Services) as a conservatorship worker
in the area of family reconciliation, and in that capacity she dealt with three
sexual abuse cases.  McVey had conducted 128 videotaped interviews of abused
children over the past year.

          Cone was a SANE nurse and a flight
nurse and had been in nursing since the 1980s.  She had been a labor and
delivery nurse, an emergency room nurse, an ICU nurse, a sexual assault nurse
examiner, and a forensic nurse examiner.  Cone had gone through the SANE
training twice by her own choice.  On the first occasion, in 2000, her SANE
training included 56 classroom hours, 16 hours of courtroom time, and multiple
SANE exams with a mentor.  She also had actually been performing SANE exams in
the emergency room for years before the SANE certification came out.  Cone had
performed approximately 75 SANE exams a year, and she has testified in court on
numerous occasions, and she recently had been to training on conducting
forensic interviews with victims to obtain information for law enforcement.

          Some of our sister courts have
recently addressed expert qualification challenges similar to Foxworth’s in
aggravated sexual assault cases involving parents and children.  See Malone,
163 S.W.3d at 792-94; Mulvihill v. State, --- S.W.3d ---, ---, 2005 WL
913156 at *4-6 (Tex. App.—Houston [1st Dist.] April 21, 2005, pet. filed); Hernandez
v. State, 53 S.W.3d 742, 750 (Tex. App.—Houston [1st Dist.] 2001, pet.
ref’d).  In each of these cases, the appellate court held that the trial court
did not abuse its discretion in finding the expert qualified to testify about
child sexual abuse victims’ behavior and family dynamics, based on education,
training, and experience in those areas.

In this case, McVey and Cone have equal or
substantially similar education, training, and experience to the experts in these
three cases.  Based on these authorities and the testimony about McVey’s and
Cone’s qualifications—especially because of their experience[2]
and the areas of testimony at issue—we cannot say that the trial court abused
its discretion in allowing them to testify over Foxworth’s objections.  We
overrule his third and fourth issues.

In a related expert matter, Foxworth’s sixth
issue complains that the trial court erred in allowing Cone to give an alleged
legal definition of penetration over his objection.  The testimony at issue is:

Q.   
Now, you testified that the
child said the Defendant had penetrated her with his fingers.

 

A.    
Sexual assault penetration
is anything that passes that plane, that barrier.

 

[Defense Counsel:      Your Honor, I’m going to
object to her giving a legal opinion in this case.

 

[Prosecutor]:             I think she’s
qualified to testify what penetration is.

 

THE COURT:         Overruled.

 

Q.    
Go ahead and tell the jury
what penetration is.

 

A.    
Penetration is anything that
passes that barrier, that’s like a door.  Once the labia majora shuts, anything
that passes inside that labia majora from the labia majora inward constitutes,
by definition, a sexual assault.

 

The trial court’s decision to admit or exclude
evidence is reviewed for abuse of discretion.  Montgomery v. State,
810 S.W.2d 372, 391 (Tex. Crim. App. 1990).

Foxworth complains on appeal that Cone’s
definition is more stringent than case law’s definition:

Thus, in common parlance, mere contact with the
outside of an object does not amount to a penetration of it.  But pushing aside
and reaching beneath a natural fold of skin into an area of the body not
usually exposed to view, even in nakedness, is a significant intrusion beyond
mere external contact.  Consequently, it is not ungrammatical to describe
Appellant’s touching of complainant in this case as a penetration, so long as
contact with the injured part of her anatomy could reasonably be regarded by
ordinary English speakers as more intrusive than contact with her outer vaginal
lips.  

 

Vernon
v. State, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992).  The facts in Vernon are quite similar.  There, the defendant
was convicted of the aggravated sexual assault of his 13-year-old stepdaughter
for penetrating her sexual organ with a finger.  The court summarized the
critical testimony as follows:

Expert testimony in the case described the
female sexual organ as being comprised of an external and an internal part. 
The external part consists of outer vaginal lips, or labia majora, which enfold
an opening to the internal organ or vaginal canal.  Clinical examination of the
complainant in this case disclosed a healing wound under the fold of these
lips, near the vaginal entrance.  The examining physician testified that this
injury was “not actually inside the vagina . . . [but] beneath the hymen . . .
on the skin that’s called the introitus[.]”  However, he also opined that the
injury was “entirely consistent with penetration of the vagina,” by which he
meant that the injury was caused by an object passing “within the plane of the
sex organ.”

 

Id. 
Cone’s testimony was consistent with the physician’s testimony in Vernon and the court of criminal appeals’ definition of penetration.  And her
testimony was not inconsistent with the jury instruction in this case:

A person commits aggravated sexual assault if
the person intentionally or knowingly causes the penetration of the anus or
female sexual organ of a child by any means. . . .  One of the elements in this
case is penetration.  The burden is on the State to prove each and every
element of the offense, if any, beyond a reasonable doubt.  You are
instructed that penetration is complete, however slight.  [Emphasis added].

 

          For these reasons, the trial court did
not abuse its discretion, and we overrule Foxworth’s sixth issue.

Lesser Included Offense

          In issue seven, Foxworth asserts that
the trial court erred in rejecting his trial attorney’s request for a lesser
included offense jury instruction for sexual assault because there allegedly was
no actual penetration.  But as his brief notes, when penetration is the omitted
element, indecency with a child is the lesser included offense of aggravated
sexual assault.  See Ochoa v. State, 982 S.W.2d 904, 908 (Tex. Crim. App. 1998); DeMoss v. State, 12 S.W.3d 553, 560-61 (Tex. App.—San Antonio 1999, pet. ref’d).  Acknowledging that his trial attorney did not request an
instruction on indecency with a child, Foxworth asserts in his eighth issue
that his trial attorney was ineffective in so failing.  Because the complaint
was not preserved in the trial court, we overrule Foxworth’s seventh issue and
will address the subject below on his ineffective assistance claim.

Ineffective Assistance of Counsel

          Foxworth alleges four issues asserting
that his trial counsel was ineffective:  (1) in failing to object to extraneous
offense evidence on the ground that the State’s notice was untimely (issue 2);
(2) in failing to object to Cone’s hearsay testimony about what Jane told her
during the sexual assault exam (issue 5); (3) in failing to request an
instruction on the lesser included offense of indecency with a child (issue 8);
and (4) in failing to object to extraneous offense evidence during
guilt-innocence (issue 9).

Foxworth did not move for a new trial or request
a post-verdict hearing on trial counsel’s strategies or the reasons for the
challenged conduct.  

          The legal standard set out in Strickland
v. Washington applies to Foxworth’s claim of ineffective assistance of
counsel.  Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80
L.Ed.2d 674 (1984); Bone v. State, 77 S.W.3d 828, 833 (Tex. Crim. App.
2002).
 To prevail on his claims, Foxworth
must first show that his counsel’s performance was deficient.  Strickland,
466 U.S. at 687, 104 S.Ct. at 2064; see Mitchell v. State, 68 S.W.3d
640, 642 (Tex. Crim. App. 2002).  Specifically, Foxworth must prove, by a
preponderance of the evidence, that his counsel’s representation fell below the
objective standard of professional norms.  Mitchell, 68 S.W.3d at 642.

Second, Foxworth must show that this deficient
performance prejudiced his defense.  Strickland, 466 U.S. at 687, 104 S.Ct. at 2064 (“This [prejudice prong] requires showing that counsel’s errors were
so serious as to deprive the defendant of a fair trial, a trial whose result is
reliable.  Unless a defendant makes both showings, it cannot be said that the
conviction or death sentence resulted from a breakdown in the adversary process
that renders the result unreliable.”).  As explained in Mitchell,
“[t]his means that the appellant must show a reasonable probability that, but
for his counsel’s unprofessional errors, the result of the proceeding would
have been different.”  Mitchell, 68 S.W.3d at 642.  A “reasonable
probability” is one sufficient to undermine confidence in the outcome.  Strickland,
466 U.S. at 687, 104 S.Ct. at 2064; Mitchell, 68 S.W.3d at 642.

          Appellate review of defense counsel’s
representation is highly deferential and presumes that counsel’s actions fell
within the wide range of reasonable professional assistance.  Mallett v.
State, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001); Tong v. State, 25
S.W.3d 707, 712 (Tex. Crim. App. 2000).  Under normal circumstances, the record
on direct appeal will not be sufficient to show that counsel’s representation
was so deficient and so lacking in tactical or strategic decisionmaking as to
overcome the presumption that counsel’s conduct was reasonable and
professional.  See Goodspeed v. State, ---  S.W.3d ---, ---, 2005 WL
766996 at *2 (Tex. Crim. App. April 6, 2005); Mitchell, 68 S.W.3d at
642.

          Rarely will the trial record contain
sufficient information to permit a reviewing court to fairly evaluate the
merits of such a serious allegation:  “[i]n the majority of cases, the record
on direct appeal is simply undeveloped and cannot adequately reflect the
failings of trial counsel.”  Thompson v. State, 9 S.W.3d 808, 813-14
(Tex. Crim. App. 1999) (to defeat the presumption of reasonable professional
assistance, “any allegation of ineffectiveness must be firmly founded in the
record, and the record must affirmatively demonstrate the alleged
ineffectiveness”); see also Johnson v. State, 68 S.W.3d 644, 655 (Tex.
Crim. App. 2002) (“[t]he record does not reveal defense counsel’s reasons for
not objecting to the prosecutor’s comments.  Given the presumption of
effectiveness and the great deference we give to decisions made by defense
counsel, we see nothing in the present record that would compel us to find
counsel ineffective.”); Mitchell, 68 S.W.3d at 642 (“[g]enerally the
record on direct appeal will not be sufficient to show that counsel’s
representation was so deficient as to meet the first part of the Strickland
standard.  The reasonableness of counsel’s choices often involves facts that do
not appear in the appellate record.  A petition for writ of habeas corpus
usually is the appropriate vehicle to investigate ineffective-assistance
claims.”).

          In the absence of evidence of trial
counsel’s reason for the challenged conduct, we assume a strategic reason for trial
counsel’s conduct, if one can be imagined.  Garcia v. State, 57 S.W.3d
436, 440 (Tex. Crim. App. 2001) (“an appellate court ‘commonly will assume a
strategic motivation if any can possibly be imagined,’ and will not conclude
the challenged conduct constituted deficient performance unless the conduct was
so outrageous that no competent attorney would have engaged in it.”) (quoting 3
W. Lafave, et al., Criminal Procedure
§ 11.10(c) (2d ed. 1999) and citing Thompson, 9 S.W.3d at 814).  But, if
nothing in the record reveals trial counsel’s reason, it is improper for us to
speculate on it.  See Thompson, 9 S.W.3d at 814; Jackson v.
State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994).  “A reviewing court can
frequently speculate on both sides of an issue, but ineffective assistance
claims are not built on retrospective speculation; rather, they must ‘be firmly
founded in the record.’”  Avila v. State, 2003 WL 21513440 at *10 (Tex. Crim. App. July 1, 2003) (not designated for publication) (quoting Bone, 77
S.W.3d at 833).

          With these legal principles in mind,
we now address Foxworth’s four ineffective assistance claims.

 

          Failure to object to extraneous
offense evidence

          Foxworth argues that the State was
allowed to produce, largely without objection, evidence that he used drugs,
relinquished his parental rights, was mean and stingy about a dog, watched
pornographic movies, threatened Jane and Mother, and evicted Jane and his other
son.  And as we held above on his first issue, Foxworth’s trial attorney did
not object when the evidence was elicited on the ground that the State’s notice
was untimely.

          Extraneous offense evidence is
inherently prejudicial, and failure to object to numerous extraneous and
prejudicial matters can constitute ineffective assistance.  See, e.g., Hall
v. State, 161 S.W.3d 142, 154 (Tex. App.—Texarkana 2005, pet. filed).  But
in this case, without evidence in the record of Foxworth’s trial attorney’s
thought processes and trial strategy as to why he did not object on the
occasions complained of—and with the conduct at issue not amounting to
outrageousness—Foxworth has not overcome the presumption of effectiveness, and we cannot speculate whether his trial counsel
was ineffective.

We have not decided that Foxworth did or did not
receive effective assistance of counsel at trial with respect to issues two and
nine.  See Thompson, 9 S.W.3d at 814 (“We are not deciding on this
direct appeal, therefore, that appellant did or did not receive the effective
assistance of counsel during trial.”).  Instead, without a record revealing
trial counsel’s strategy or motivation, Foxworth has not defeated the strong
presumption that his trial counsel’s actions fell within the wide range of
reasonable professional assistance.  See id.  Thus, we overrule issues
two and nine without prejudice.  See Robinson v. State, 16 S.W.3d 808,
813 n.7 (Tex. Crim. App. 2000) (“the proper procedure will be for the appellate
court to overrule an appellant’s Sixth Amendment claim without prejudice to
appellant’s ability to dispute counsel’s effectiveness collaterally.”). 

          Lesser Included Offense

          Foxworth’s eighth issue complains of
his trial attorney’s failure to request a lesser included offense instruction
on indecency with a child.  As we noted above, only an instruction on sexual
assault was requested (and rejected).  Failure
to request a jury instruction on a lesser included offense can render
assistance of counsel ineffective if, under the particular facts of the case,
the trial judge would have erred in refusing the instruction had counsel
requested it.  Vasquez v. State, 830 S.W.2d 948, 951 (Tex. Crim. App.
1992).  Indecency with a child is a
lesser included offense of aggravated sexual assault.  See Ochoa v. State,
982 S.W.2d 904, 908 (Tex. Crim. App. 1998); DeMoss v. State, 12 S.W.3d
553, 560-61 (Tex. App.—San Antonio 1999, pet. ref’d).  If there is some
evidence in the record that would permit a jury rationally to find that if the
defendant is guilty, he is guilty only of the lesser included offense, the
defendant is entitled to a lesser included offense instruction.  Campbell v. State, 149 S.W.3d 149, 152 (Tex. Crim. App. 2004).

          Foxworth argues that because there was
evidence that Foxworth “rubbed” Jane’s vagina and injuries consistent with
“rubbing,” there was some evidence of sexual contact without penetration.  But
there was substantial evidence of penetration:  Jane testified that Foxworth’s
fingers “went inside [her] private” and that he stuck his hand inside her
panties and “moved it in an out and around” her “private.”  Cone testified that
Jane told her that Foxworth put “his finger in her private.”  With this
evidence, a jury could not rationally have found that if Foxworth was guilty,
he was guilty only of indecency with a child.  Because Foxworth was not
entitled to a lesser included instruction on indecency with a child, his trial
attorney was not ineffective in failing to request such an instruction.  We
overrule Foxworth’s eighth issue.

          Hearsay

          Foxworth’s fifth issue complains of
his trial attorney’s failure to object to Nurse Cone’s hearsay testimony about
what Jane told her had happened to her and Nurse Cone’s written exam report. 
Foxworth asserts that the hearsay exception found in Texas Rule of Evidence
803(4) does not apply:  “Statements made for the purposes of medical diagnosis
or treatment and describing medical history, or past or present symptoms, pain,
or sensations, or the inception or general character of the cause or
external source thereof insofar as reasonably pertinent to diagnosis or
treatment.”  Tex. R. Evid. 803(4)
(emphasis added).

Foxworth argues that Jane’s statements to Nurse
Cone were not made for the purpose of medical treatment because Nurse Cone
allegedly did not treat Jane.  Foxworth asserts that Jane’s statements were
made to Nurse Cone “during a forensic exam” and that Nurse Cone was essentially
an arm of the State in performing the sexual assault exam.

Foxworth cites no authority that victim’s
statements made during a SANE exam do not fall within Rule 803(4).  A plethora
of Texas cases support the admission of such testimony, and recently the Austin
Court of Appeals listed many such cases:

The medical treatment exception to the hearsay
rule is based on the assumption that the patient appreciates that the
effectiveness of the treatment may depend on the accuracy of the information
provided to the physician.  Fleming v. State, 819 S.W.2d 237, 247 (Tex.
App.—Austin 1991, pet. ref’d).  In applying the medical treatment exception to
cases involving child abuse, courts have allowed the victim’s statements
concerning the identity of the attacker to be admitted because treatment of
child abuse must begin with removing the child from the abusive setting.  Id.; see also Beheler v. State, 3 S.W.3d 182, 189 (Tex. App.—Fort
Worth 1999, pet. ref’d); Molina v. State, 971 S.W.2d 676, 683-84 (Tex.
App.—Houston [14th Dist.] 1998, pet. ref’d).  While appellant does contend that
the statements identifying him were inadmissable hearsay, the crux of his
appeal is that the statements were made to a person who is not a member of the
medical profession and who lacks medical training.

 

In every case we have found, save two, in which
statements were introduced using Rule 803(4), the witness would have satisfied
the Legislature’s definition of a physician or health care provider as defined
in the medical malpractice statute.  See Gregory v. State, 56 S.W.3d 164
(Tex. App.—Houston [14th Dist.] 2001, no pet.) (registered nurse allowed to
testify about statements made and symptoms of child abuse victim); Beheler
v. State, 3 S.W.3d 182 (Tex. App.—Fort Worth 1999, pet. ref’d) (sexual
assault nurse examiner at hospital testified about interview with patient prior
to conducting physical exam); Molina v. State, 971 S.W.2d 676 (Tex.
App.—Houston [14th Dist.] 1998, pet. ref’d) (physician testified to statements
made by victim during physical examination); Torres v. State, 807 S.W.2d
884 (Tex. App.—Corpus Christi 1991, pet. ref’d) (nurse allowed to testify under
Rule 803(4) about victim’s answers to questions asked during collection of
samples for “rape kit”); Fleming v. State, 819 S.W.2d 237 (Tex. App.—Austin
1991, pet. ref’d) (physician and mental health therapist testified about
victim’s statements).  But see Puderbaugh v. State, 31 S.W.3d 683 (Tex.
App.—Beaumont 2000, pet. ref’d) (clinical social worker who practiced with
physicians in a family office practice testified about statements made during
therapy by a victim of child abuse); Gohring v. State, 967 S.W.2d 459
(Tex. App.—Beaumont 1998, no pet.) (therapist, under supervision of licensed
psychologist, could testify about victim’s statements).

 

Moore v. State, 82
S.W.3d 399, 403-04 (Tex. App.—Austin 2002, pet. ref’d) (footnotes omitted); see
also United States v. Renville, 779 F.2d 430, 439 (8th Cir. 1985); In re
L.S., 748 S.W.2d 571, 576 (Tex. App.—Amarillo 1988, no writ).

Because this hearsay exception applies to Nurse
Cone’s testimony and report, Foxworth’s trial attorney’s failure to object is
immaterial, as the trial court would have been well within its discretion in
overruling such an objection.  We overrule Foxworth’s fifth issue.

 

 

Conclusion

          Having overruled all of Foxworth’s
issues, we affirm the trial court’s judgment.

 

 

BILL VANCE

Justice

 

Before
Chief Justice Gray,

Justice Vance, and

Justice Reyna

Affirmed

Opinion
delivered and filed September 21, 2005

Do
not publish

[CRPM]








 









    [1]       Foxworth’s
second issue (addressed below) complains of his trial attorney’s failure to
object.





    [2]       “[W]here
appropriate, ‘experience alone may provide a sufficient basis for an expert’s
testimony.’”  Mulvihill, --- S.W.3d at ---, 2005 WL 913156 at *4 (quoting
Hernandez, 53 S.W.3d at 751).