

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-22-00201-CR

_____

SULAIMON ALHADAD AKA SALAIMON ALHADAD, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 485th District Court
Tarrant County, Texas
Trial Court No. 1563418D

---

Before Kerr, Bassel, and Wallach, JJ.
Memorandum Opinion by Justice Kerr

# MEMORANDUM OPINION

Sulaimon Alhadad aka Salaimon Alhadad (al-Hadad) appeals his conviction for continuous sexual abuse of a young child.[1] *See* Tex. Penal Code Ann. § 21.02. As a result of al-Hadad's disruptive behavior during trial, the trial-court judge had him removed from the courtroom. In two points, al-Hadad argues that (1) the trial court abused its discretion by failing to find that his conduct raised the issue of his competency to stand trial and (2) the trial court denied him the right to confront his accusers during trial in violation of his right of confrontation under the United States and Texas Constitutions. We will affirm.

## I. Background

Al-Hadad does not challenge the sufficiency of the evidence supporting his conviction. We will therefore set out only those facts essential to our analysis of his competency and confrontation-right points.

## A. Plea-Offer Hearings and al-Hadad's Attempt to Represent Himself

A grand jury indicted al-Hadad in November 2018, and the trial court appointed him counsel. During a February 2022 plea-offer hearing, al-Hadad repeatedly insisted that he did not understand the nature of the law or the nature of the charges against him and questioned the trial court's jurisdiction. The trial-court judge explained to al-Hadad that the court had jurisdiction, that he wasn't required to

---

[1]During a pretrial hearing, al-Hadad's attorney notified the trial court of the correct spelling of al-Hadad's last name, which we use here.

understand the law in order for the case to proceed, and that he had been appointed an experienced attorney who did understand the law to represent him. Al-Hadad retorted,

> Okay. So to be sure, my attorney, the Court, and all of its officers are allowed to understand the law, understand the nature of the law and the letter of the law, and to proceed in the jurisdiction with rules and laws and procedures and penal codes and all that kind of stuff -- you guys are allowed to understand these things; but I, the accused, am not?

The trial court responded,

> You are allowed to be given the nature of the accusation against you. If you continue to say you don't understand that, then we can for sure have you examined for competency. But that has no bearing on whether or not you understand -- where you come in here and say that you understand how the law works. Because you can stand here all day and say you don't understand, and unless a doctor says that you are legally incompetent to proceed, we're going to proceed.

Al-Hadad then claimed that he did not want the trial court to think he was "trying to play games." The trial court replied, "That's 100 percent what you are doing."

After more back and forth with al-Hadad regarding the charges against him and the trial court's jurisdiction,[2] the trial-court judge stated,

> I cannot control what you do not understand because there seems to be a lot of things today that you're saying that you do not understand. And from my perception of what I'm seeing today, what I am observing about you, you are competent to proceed.

---

[2]During this discussion, al-Hadad stated that he understood that he was the accused but claimed that he did not understand that he was also the defendant in the case.

You are answering questions by saying you don't understand when, in fact, the very basic and simple questions, you do understand. You do not appear to me to be a person who has an incapacity to understand these things. You appear to me to be a person who is answering to be manipulative.

This is what . . . I'm observing in open court; that the basic "yes" or "no" questions, you have refused to answer, and you have turned them around and said that you do not understand a basic question of did your attorney say certain words to you.

. . . .

At this point, I am taking from the fact that you will not answer any questions or that you're saying that you do not understand that you are rejecting [the State's plea-bargain] offer.

About two months after the plea-offer hearing—in March 2022—the trial court heard al-Hadad's request to represent himself. During that hearing, the trial court explained the difficulties of self-representation and asked al-Hadad several times if he was going to represent himself or keep his appointed attorney. Each time, however, al-Hadad sidestepped the inquiry by insisting that he did not understand the law, by complaining about proceeding with the case despite his alleged lack of understanding, and by questioning the trial court's jurisdiction.

Because al-Hadad refused to answer the trial court's questions about whether he wanted to forgo legal representation, the trial court noted for the record that

there has been no indication from your attorney or otherwise, that you are [not] a competent person who understands the charges against him, [or] that you are [not] a person who is able to communicate with your attorney about the nature of the charges against you and any defenses that you would like to raise.

There is nothing that I have observed in court, nor has any information been provided to me, that there's any indication that you are not competent to proceed in trial.

[Defense counsel], at this time, do you have any information that would contradict that Mr. [a]l[-H]adad is competent to proceed in a jury trial?

[DEFENSE COUNSEL]: No, Your Honor.

THE COURT: All right. Thank you.

So what I am going to say at this time is you are competent to proceed. At this time, what I am going to note for the record, in my observations through this process, is that you are asking questions in circles; that the things that you say that you do not understand are not as a result of you not being competent to proceed to trial under the legal definition of "competency," but they are a choice that you are making to prolong and to make a gamesmanship of this process or in some way manipulate this process because you have read somewhere by someone that you may be able to present these things to a Court.

I don't know what your motivation is in any of this. But at this point when you say that you don't understand, I believe the things that you don't understand do not go to competency and are not covered by the fact that you have been appointed an attorney who is very capable to represent you on this charge.

At another plea-offer hearing in April 2022, al-Hadad refused to answer any questions until the trial court's jurisdiction had been proved and repeatedly declared that he was there "sui juris in propria persona."[3]

---

[3]Translation: "of one's own right," "in one's own person." *See Sui juris* & *In propria persona*, Black's Law Dictionary (11th ed. 2019).

**B. Appointed Counsel's Motion to Withdraw and Continuance Motion**

In June 2022, al-Hadad's appointed attorney moved to withdraw because a conflict had developed between him and al-Hadad that affected their ability to communicate and to prepare for al-Hadad's upcoming trial. In light of the length of counsel's representation (three and a half years) and al-Hadad's imminent trial setting (that week), the trial court denied the withdrawal motion.

The trial court then considered al-Hadad's motion to continue the trial based on al-Hadad's mental health, which his counsel claimed had deteriorated. Al-Hadad's counsel pointed to the results from a court-ordered competency evaluation, which had been completed a few days before. Although the examining psychologist had determined that al-Hadad was competent to stand trial, he had diagnosed him with "unspecified anxiety disorder."[4] Over the State's objection, the trial court continued the trial to late August 2022.

**C. Al-Hadad's Trial**

On the morning of August 22, 2022, the trial court called the case to trial.[5] Outside the venire's presence, al-Hadad once again claimed that he did not understand the nature of the case or the proceedings and complained that the case was nevertheless going forward. The trial court responded that al-Hadad's attorney

---

[4]This psychologist generated a written report containing his findings and conclusions and filed that report with the trial court under seal.

[5]Visiting Judge Mollee Westfall presided over the trial.

could answer any questions that al-Hadad had about the case. Al-Hadad also claimed

not to understand that he could wear civilian clothing provided to him instead of his

jail jumpsuit. Nevertheless, his counsel confirmed that he was competent to stand

trial:

> THE COURT: Okay. Mr. al-Hadad, do you understand that the Court . . . will provide to you civilian clothes for you to have your trial in?

> THE DEFENDANT: Your Honor, the only thing I understand is that whatever –

> THE COURT: Okay. So you being provided clothes to dress out in, you have opted to not change into those clothes.

> THE DEFENDANT: I don't really understand.

> THE COURT: Okay. Well, do you understand my question that you can have a trial in the jail jumpsuit, which is what you're in right now, but your attorneys do not want you to do that, and that is not your best option.

> THE DEFENDANT: Is that part of the proceedings?

> THE COURT: That is part of the proceedings, sir

> THE DEFENDANT: That's what I'm asking to ask you questions about.

> THE COURT: Okay, Mr. al-Hadad. I'm not here to answer your questions. You need to listen to me. I'm here to tell that you can change into different clothes, and I see that you have opted not to do that.

> So, Mr. al-Hadad, to this indictment, you may . . . plead guilty or not guilty. What is your plea, sir?

> THE DEFENDANT: So I'm going to participate in proceedings I don't understand?

THE COURT: To this indictment, you may plead guilty or not guilty.

THE DEFENDANT: All right. Your Honor, I don't understand the proceedings.

THE COURT: Okay. I'm going to enter a plea of not guilty on your behalf.

THE DEFENDANT: If I don't know what I'm doing, how can you ask me to do something . . . in a realm that I don't know the rules?

THE COURT: And, Counsel, do you believe your client to be competent to engage in these proceedings?

[DEFENSE COUNSEL]: Yes, Your Honor.

The venire was then brought in, and al-Hadad was present in the courtroom for the entire jury-selection process. *See* Tex. Code Crim. Proc. Ann. art. 33.03.

That afternoon, during a hearing outside the jury's presence, al-Hadad claimed that he didn't feel well:

THE DEFENDANT: Can I go in the back, please? I --

[DEFENSE COUNSEL]: He says he doesn't feel good. He's going to pass out, Your Honor.

THE COURT: You need to sit down.

[DEFENSE COUNSEL]: Sit down.

THE COURT: You need to sit down, sir.

[DEFENSE COUNSEL]: Sit down. You'll be okay. She asked you to sit down.

8

THE COURT: Standing up never helped anyone who's about to pass out. You need to sit down.

THE DEFENDANT: You can't make me. I'm going in the back.

[DEFENSE COUNSEL]: No. Don't.

THE DEFENDANT: Take me to the back.

THE COURT: No, you need to --

THE DEFENDANT: I don't want to be a part of this, and you can't make me.

Al-Hadad was then placed in the holdover cell, but the trial court ensured that the door was left open so that he could hear the proceedings. The trial court instructed the bailiffs to tell al-Hadad that he could rejoin the proceedings in the courtroom at any time. But al-Hadad declined the trial court's invitation to return to the courtroom and began singing. Al-Hadad's counsel requested a continuance until al-Hadad could be convinced to return to the courtroom. Al-Hadad briefly stopped singing but then started again. Al-Hadad's counsel again asked for a continuance until al-Hadad could "be present at his own proceeding" because he had a "constitutional right to be present at the proceeding that has his liberty at stake." The trial court denied the continuance:

> It is clear to this Court that Mr. al-Hadad has stepped back into the holdover voluntarily, despite the Court's repeated requests through the bailiffs for him to rejoin us, despite the Court's offer that he be able to sit in the holdover door and listen.
>
> He is now in [the holdover] cell and has been continuously singing very loud prayers in Arabic. It's the Court's supposition that's

9

[what we've been] hearing for the last ten minutes, so loud that it's very difficult for us to hear each other. So he has voluntarily absented himself and has continued to do so. And I'm going to overrule your objection based on that.

Al-Hadad continued to sing loudly while the hearing resumed. Al-Hadad sang continuously for 30 minutes, disrupting both his trial and the jury selection taking place in an adjacent courtroom. But after al-Hadad's attorney told al-Hadad that he would be taken back to jail if he didn't stop singing, there were no further disruptions that day.

Before opening statements the following day, al-Hadad objected, "You're not going to afford me the Sixth Amendment right to understand the charges . . . but you're going to proceed with this trial even though I don't understand . . . the charges against me," which prompted the trial court to excuse the jury. Outside the jury's presence, the trial court reprimanded al-Hadad about his behavior:

> All right, Mr. al-Hadad. We had a few problems yesterday with your -- with you being disruptive back in the holdover, saying that you weren't going to attend your own trial. You excused yourself to the holdover, and then you proceeded to sing for many, many minutes very loudly. We didn't have the jury in the box.
>
> To attend this trial, you are going to have to not be disruptive. So what you just said is disruptive. Not being disruptive is sitting quietly. You do not have a speaking part unless you testify from the witness stand.

The trial court went on to explain that the trial was going forward, but al-Hadad kept interjecting that he did not understand the charges against him. The trial-court judge cautioned al-Hadad that if he continued to be disruptive, she would put him in the

holdover cell, where he could "listen to [his] own trial quietly from there." The trial court warned that if that didn't work, al-Hadad would be taken back to the jail where he could watch the trial over Zoom.

The jury was brought back into the courtroom, and the State began its opening statement. Al-Hadad interrupted the State by objecting, demanding to know what the charges were against him, and asking the trial-court judge if she was going to proceed with the trial without affording him his constitutional rights. The trial court excused the jury and had al-Hadad put in the holdover cell. The trial court ensured that the holdover cell's door was open and that al-Hadad could hear the proceedings.

Once in the holdover cell, al-Hadad began repeatedly screaming "objection" and complained that he could not face his accuser "from back [there]." At that point, the trial court explained for the record,

> All right. Because of Mr. al-Hadad's continued disruption of this trial, he cannot be out in this courtroom without continually asserting that he does not understand the charges and that I'm violating his Sixth Amendment.
>
> I -- I wanted to do an intermediate step and have him be physically present in the courtroom so that I could check in with him from time to time to see if he's changed his behavior and is going to be able to be in this courtroom and not be a distraction.
>
> In the holdover, he started screaming "objection" over and over loudly and continuously. So I'm taking the third step, and he's going to be in front of a Zoom terminal in the jail. So he's going to be remote from this proceeding, but he is going to -- because we have 360-degree cameras all over this courtroom, he'll be able to see the witness, he'll be able to see Counsel, he'll be able to see the courtroom as if he was here, and I have the ability to mute him so that he can watch and listen

11

without us hearing him being continually disruptive, which seems to be part of his strategy for this trial, to disrupt it and delay it by whatever means.

After al-Hadad had been relocated to "a Zoom terminal" in the jail, his counsel objected to his being removed from the courtroom without his consent and being unable to participate in his trial in violation of his confrontation rights under the United States and Texas Constitutions. The trial court responded that it was al-Hadad's own behavior keeping him from being in the courtroom and that the trial court would accommodate "every reasonable request" for defense counsel to confer with al-Hadad. The trial court explained that it would not stop the trial simply "because [al-Hadad was] continually disruptive with illegitimate complaints of not understanding what is going on."

At that point, al-Hadad held a sign in front of the camera that stated, "I do not understand the charges. My attorney failed to explain the nature and cause." The trial court warned al-Hadad not to display any more signs. Al-Hadad then disconnected Zoom and proceeded to pull several wires from the computer. According to the trial court, al-Hadad "made some statements about that he's not going to attend and that . . . he wants to act up so someone will have to shoot him." The trial-court judge then stated that she believed that the only option at that point was to physically restrain him so that he could not "sever the connection between himself and this trial any longer." After al-Hadad was restrained and the Zoom connection had been restored, the trial court announced,

12

All right. So for the record, we had Mr. al-Hadad restrained as to his hands so he could no longer grab the computer.

He has dumped himself out of the chair that he was sitting in, and he is laying on the floor now. So we will have to have him restrained to the chair, I suppose. That's the next level that I can think of that's -- I don't see how he can participate in this trial laying on the floor.

So if you could let them know that we need to restrain him to the chair.

It appears he is pretending to be unconscious, but I don't think he is unconscious.

As a result of al-Hadad's purposely falling out of the chair he had been sitting in, the trial court asked for a "sturdier chair that he could be physically restrained to." While a sturdier chair was being obtained, al-Hadad removed his clothing and threatened suicide. He then put his head in a toilet "in an apparent attempt to drown himself." The trial court advised,

And now he's being checked out by medical. And at this point, we are going to restrain him with the least amount of restraint that is possible in order to have him participate in this trial. And if we cannot do that in a way that it's appropriate to look at him, then I will mute the video to where we cannot see him, but he can continue to see us and this trial and hear this trial.

And I will periodically put his attorney in a breakout room with him. He has a Zoom link, and he is on Zoom right now, and he has Zoomed with him previously, and he can Zoom with him from time to time and talk to him from . . . an office where he is going to . . . be able to have a private conversation with his client, and we'll continue that way.

The Court does continue to try to find ways that Mr. al-Hadad can both see and hear his trial since he has shown that he won't

13

participate without disrupting when he's within earshot of the jury. And I'll continue to do the best I can to make it to where he has the most access to this trial with the least prejudice to himself and the least amount of restraint possible.

. . . .

For the record, Mr. al-Hadad is now redressed in a jail muumuu. He is in a restraint chair with his limbs restrained to the chair, and I assume his feet; although, I can't see that. But he has opted to bend all the way over so that in order to --

THE DEFENDANT: (Inaudible.)

THE COURT: In order to see the top of his head -- in order to see him, we can see just the top of his head.

Now he is leaning back in the chair and wailing. I have muted him. So in order for him to see and hear this proceeding, I am going to mute his video, and he'll be able to see and hear his trial, should he choose to do that.

The trial court brought the jury back into the courtroom, and the State continued with its opening statement. A short time later, al-Hadad slipped out of the restraint chair and disconnected Zoom again. The trial court sent the jury on another break.

While al-Hadad was being put back into restraints, he spit on jail staff and tried to bite a deputy. He started continually screaming and thrashing once restrained. The trial court then concluded,

Mr. al-Hadad has voluntarily absented himself from this proceeding. There is no possible way that he can see or hear and perceive any content.

14

I am concerned that he is in the process of harming himself from . . . the continual screaming that is apparent from watching the video.

So . . . at this point, I'm going to have him put back in his [jail] cell, and then we will check back with him to see if he is willing to participate in any way that will be meaningful to him and not disrupt these proceedings and not harm him or the jail staff. So it's so ordered.

. . . .

So take him back to the [jail] cell, and then we'll check back with him. If we can get to an afternoon break, we will check back with him to see where he is.

I can see that he continues to scream continually and to pull at his restraints.

All right. So we will sign off from Zoom. I'll sign him off. . . . [J]ust keep it open over there, if you would, and I'm going to . . . mute the video, or I'll put it in the breakout room, and if he can come back onto Zoom, then we'll try that.

Al-Hadad's counsel then asked for a continuance to have a competency exam done to determine al-Hadad's competency to stand trial. Counsel also renewed his right-of-confrontation objection. The trial court denied the continuance request and overruled the objection:

And at this point, the Court finds that Mr. al-Hadad's behavior is a functional constructive equivalent to him exiting this courtroom and exiting this city and state and country and deciding to go far, far away and not be at this trial.

All of his behavior was by his own choice, that the Court and the court staff has taken every opportunity to calm him, de-escalate him, to exhort him to continue to participate in this trial, to not be disruptive, to not make decisions that are not going to be helpful to him, and to make decisions that enable him to participate in his own trial. However, I'm

15

not going to allow Mr. al-Hadad to create his own continuance, which is exactly what he is trying to do.

He did not want this case to go to trial. He's made several different attempts to try to delay this trial, to divert this trial, to change the procedure of this trial, and to stop the procedure of this trial, and I'm not going to let his choices and his behavior do that.

Everything that the Court has observed with respect to Mr. al-Hadad appears to be his own choice in acting disruptive and becoming increasingly angry and acting outrageous. He has decided to scream and thrash and put his head in the toilet and do everything he can to prevent this trial going forward. That is not grounds for a continuance.

I am going to see if we can have the doctor who examined him two weeks ago[6] come check back in with him and give us a report tonight or tomorrow, but that is not going to be the basis of a continuance at this time, because, as I've stated previously, Mr. al-Hadad is not going to, by his own disruptive behavior, create his own continuance.

Al-Hadad did not rejoin the trial remotely or in person for the rest of the day. The following morning, al-Hadad was back in the holdover cell just outside the courtroom. According to his attorney, al-Hadad wanted "to participate in the proceedings from the holdover cell . . . because he believe[d] that [it was] the best location for him . . . to be present and listen to the proceedings." But his attorney

---

[6]The trial court apparently misspoke here because nothing in the record shows that al-Hadad had been examined two weeks before trial. As noted, a psychologist examined al-Hadad in June 2022, about two *months* before trial. Additionally, there is an invoice for psychological services in the record indicating that al-Hadad was examined about a month before trial. But there is no written report from this examination in our record, and neither al-Hadad nor the State mentions the examination. We contacted the trial-court clerk, who informed us that there is no report from this examination in the trial-court record.

16

objected again on right-of-confrontation grounds and moved for a continuance to have al-Hadad "examined . . . to see if there's been some kind of mental health issue that's . . . arisen and . . . get a definitive answer on whether or not he can participate voluntarily." The trial court overruled the objection and denied the motion, observing that

> [a]ll of the issues . . . that you have so ably outlined are brought on by your client's voluntary choices and behaviors.
>
> The Court has had [the] opportunity to reflect on yesterday afternoon, which were -- his behaviors were startling and disturbing. And the Court has been in the criminal justice system -- I've been in the criminal justice system for over 26 years, and I've never seen anyone act like Mr. al-Hadad.
>
> However, Mr. al-Hadad's very bad behavior, disruptive behavior, his violence, his lack of cooperation, his screaming, his thrashing, as soon as no one is watching or he doesn't have anything to gain from that behavior, that behavior has -- based on the Court's observation and what has been relayed to the Court by deputies, it abruptly stops. He can turn it off and on.
>
> He immediately stops behaving the way that I described yesterday with the thrashing and the wailing and the spitting that we saw with him in the restraint chair as soon as the camera was off and he was allowed to go back to his [jail] cell. That behavior immediately stopped.
>
> Mr. al-Hadad gets disruptive in this courtroom and starts yelling about how he's not able to understand the charges and his Fifth -- Sixth Amendment rights are being violated.
>
> As soon as he goes back to the holdover, I can audibly hear him having rational conversations with the people who are interacting with him back there about what's going to happen next, about his dissatisfaction with going forward on this trial. This is a strategy decision on his part.

17

He was examined two weeks ago and found to be competent.[7] His family has testified that he has no history of mental illness. He has not suddenly developed a mental illness in the last two weeks, based on this Court's opinion and observations and knowledge of how mental illnesses work.

Brain-based mental illnesses don't suddenly develop at the moment when they would be the most appropriate and helpful to someone. They develop completely independently of that, and he has not developed a mental illness, in this Court's opinion.

I'm still working to get him examined, but I don't see any reason to delay this trial. We will have him examined at the earliest possible moment. . . .

But, again, I -- I think this is a strategy on his part to delay this trial, to have this trial not happen, and I'm not going to reward this level of behavior, which has been overwhelmingly inappropriate and completely outside the bounds of the way that I've ever seen anyone act during a trial. I'm not going to reward that behavior by giving him a continuance.

I do want him to be in this courtroom, if that's at all possible. He is in the holdover, and he can hear this proceeding, and you can easily reach him to confer with him. If he can't sit in that chair and be appropriate, that's the second[-]best place for him to be, is in the holdover.

The trial continued with al-Hadad sitting in the holdover cell with the door open so that he could hear the proceedings and "have a chance to confer freely with his attorney at his attorney's request." While the State played a video of al-Hadad's interview with law enforcement, a psychologist arrived to examine al-Hadad.[8] Because

---

[7] *See supra* note 6.

[8] On its own motion, the trial court had ordered a competency examination and appointed a psychologist to examine al-Hadad. The psychologist who had examined

18

al-Hadad had stuffed toilet paper in his ears and was thus not listening to the video's audio, the trial court decided to have the psychologist examine al-Hadad while the video played. Al-Hadad's attorney re-urged his earlier objections based on al-Hadad's absence from the courtroom and moved for a mistrial. The trial court overruled the objections and denied the mistrial request:

> And, again, I'm ready to accommodate Mr. al-Hadad should he wish to join us and attend his trial. I want him to do that, and . . . at any moment, he will be restored in this courtroom when he can assure Counsel and the Court that he will not disrupt the proceedings.

After the examination was finished, al-Hadad returned to the holdover cell while the video was still playing.[9] Later, outside the jury's presence, the trial court reported that the psychologist had concluded that al-Hadad was competent to stand trial and that "he [was] malingering in order to get out of trial."[10]

The trial continued with al-Hadad in the holdover cell. He did not disrupt the proceedings for the rest of the day. The next day, al-Hadad was present in the courtroom and did not disrupt the proceedings. The jury found him guilty of continuous sexual abuse of a young child as charged in the indictment.

---

al-Hadad in June 2022 was unavailable, so the trial court appointed a different psychologist to examine al-Hadad.

[9]The video was over three hours long.

[10]The trial court also stated that the psychologist was going to provide a written report either later that day or the next day. The report was filed under seal and, at the State's request, this report, along with the psychologist's report from the June 2022 examination, was included in a sealed supplemental clerk's record filed with us.

Al-Hadad was also present in the courtroom the following day for the punishment phase. He apologized to the trial court before testifying:

> If we're going to start with the events from the last couple of days, I'd first like to apologize for my previous misconduct and disruptive behavior in the court. It was unprofessional, careless, and probably intimidating. It certainly did not help my case. I realize the law is more professional and can be more intimidating than careless.

He also admitted to doing "everything [he] could to prevent this trial from proceeding." At the hearing's conclusion, the trial court assessed al-Hadad's punishment at 35 years' confinement and sentenced him accordingly. Al-Hadad has appealed, raising two points related to his competency and his right of confrontation.

## II. Al-Hadad's Competency

Requiring an incompetent person to stand trial violates due-process principles. *Owens v. State*, 473 S.W.3d 812, 816 (Tex. Crim. App. 2015). A defendant is presumed competent to stand trial unless proved incompetent by an evidentiary preponderance. Tex. Code Crim. Proc. Ann. art. 46B.003(b). A person is incompetent to stand trial if he does not have "(1) sufficient present ability to consult with [his] lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against [him]." *Id.* art. 46B.003(a).

"Procedurally, a trial court employs two steps for making competency determinations before it may ultimately conclude that a defendant is incompetent to stand trial." *Boyett v. State*, 545 S.W.3d 556, 563 (Tex. Crim. App. 2018). The first step is an informal inquiry, and the second step is a formal competency trial. *Id.* A formal

competency trial is required if, after the informal-inquiry stage, the trial court determines that "there is more than a scintilla of evidence that would support a rational finding of fact that the accused is incompetent to stand trial." *Turner v. State*, 422 S.W.3d 676, 696 (Tex. Crim. App. 2013); *see* Tex. Code Crim. Proc. Ann. art. 46B.005.

Al-Hadad argues in his first point that the trial court abused its discretion by not making an informal inquiry into his competency to stand trial and by not further ordering a formal competency trial because he "displayed bizarre, erratic, violent[,] and irrational behavior" immediately before and during his trial. We review challenges to the adequacy of a trial court's informal competency inquiry, and its findings following such an inquiry, for an abuse of discretion. *See Luna v. State*, 268 S.W.3d 594, 600 (Tex. Crim. App. 2008); *Thomas v. State*, 312 S.W.3d 732, 736–37 (Tex. App.— Houston [1st Dist.] 2009, pet. ref'd).

The trial court's duty to informally inquire into the issue of a defendant's competency is triggered when it receives information "suggesting that the defendant may be incompetent to stand trial." Tex. Code Crim. Proc. Ann. art. 46B.004(a), (c). "Either party may suggest by motion, or the trial court may suggest on its own motion, that the defendant may be incompetent to stand trial." *Id.* art. 46B.004(a). "If evidence suggesting the defendant may be incompetent to stand trial comes to the attention of the court, the court on its own motion shall suggest that the defendant may be incompetent to stand trial." *Id.* art. 46B.004(b). Upon suggestion that a

21

defendant lacks competency to stand trial, the trial court "shall determine by informal inquiry whether there is some evidence from any source that would support a finding that the defendant may be incompetent to stand trial." *Id.* art. 46B.004(c). In conducting an informal inquiry, the trial court may "appoint one or more disinterested experts to . . . examine the defendant and report to the court on the competency or incompetency of the defendant." *Id.* art. 46B.021(a)(1).

A trial court is not required to follow specific procedures during an informal inquiry. *See George v. State*, 446 S.W.3d 490, 501 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). Here, after observing al-Hadad's erratic, disruptive behavior immediately before and during trial and after al-Hadad's attorney requested a competency examination, the trial court ordered Dr. Kristi Compton to examine al-Hadad. Dr. Compton examined al-Hadad and reported to the trial court that in her opinion, al-Hadad was malingering to avoid trial but was competent. Consistent with these conclusions, Dr. Compton's written report stated that (1) "[t]here is no evidence of a genuine mental disorder"; (2) al-Hadad's "presentation and testing results are positive for malingering[,] which is designed to avoid and/or delay prosecution"; and (3) "there is a reasonable degree of scientific certainty that [al-Hadad] has an adequate understanding of his case, parties, [and] proceedings, [and] can assist his attorney, testify [o]n his own behalf, and maintain appropriate courtroom decorum if he chooses to do so." *See* Tex. Code Crim. Proc. Ann. art. 46B.024. Based on these findings, Dr. Compton determined that al-Hadad was competent to stand trial. We

22

thus conclude that contrary to al-Hadad's contention on appeal, the trial court here adequately conducted an informal inquiry into his competency.[11]

Al-Hadad next asserts that his erratic, bizarre behavior and the fact that the trial-court judge admitted that she had never seen behavior like al-Hadad's in her 26 years in the justice system was some evidence to support a finding that al-Hadad was incompetent to stand trial. Al-Hadad argues the trial court was thus required to hold a formal competency trial. We disagree.

During the informal-inquiry stage, the trial court must focus on three matters. "First, . . . [it must consider] whether there is 'some evidence' of incompetency to stand trial." *Boyett*, 545 S.W.3d at 563. This "some evidence" standard requires only that there be "more than none or a scintilla [of evidence] that rationally may lead to a conclusion of incompetency." *Turner*, 422 S.W.3d at 692 (quoting *Ex parte LaHood*, 401 S.W.3d 45, 52–53 (Tex. Crim. App. 2013)). "Second, a trial court must consider only evidence of incompetency, and it must not weigh evidence of competency against the evidence of incompetency." *Boyett*, 545 S.W.3d at 564. And third, the evidence must be such that "it may rationally be inferred *not only* 1) that the defendant suffers some degree of debilitating mental illness, and that 2) he obstinately refuses to

---

[11]Al-Hadad complains that Dr. Compton's report was not admitted into evidence and that Dr. Compton did not "testify to her testing and findings that [al-Hadad] was competent to stand trial." Al-Hadad did not raise these complaints in the trial court, and they are thus not preserved for our review. *See* Tex. R. App. P. 33.1(a)(1); *Montelongo v. State*, 623 S.W.3d 819, 822 (Tex. Crim. App. 2021).

cooperate with counsel to his own apparent detriment, *but also* that 3) his mental illness is what fuels his obstinacy." *Id.* "Thus, it is not enough to present evidence of either a defendant's mental illness alone or his refusal to cooperate with counsel—rather, there must be some evidence indicating that the defendant's refusal to rationally engage with counsel is caused by his mental illness" before the trial court is required to hold a competency trial. *Id.*; *see Clark v. State*, 592 S.W.3d 919, 927 (Tex. App.—Texarkana 2019, pet. ref'd).

As outlined above, Dr. Compton determined that al-Hadad was not mentally ill. And although there was evidence that al-Hadad had an anxiety disorder, nothing linked his on-and-off courtroom and Zoom behavior to anxiety. There was thus no evidence from which it could "rationally be inferred" that al-Hadad "suffer[ed] some degree of debilitating mental illness" that "fuel[ed]" his obstinate refusal "to cooperate with [his] counsel to his own apparent detriment." *Boyett*, 545 S.W.3d at 564; *see Clark*, 592 S.W.3d at 928–29.

Accordingly, we conclude and hold that the trial court did not abuse its discretion by not holding a formal competency trial and by determining that al-Hadad was competent to stand trial. We overrule al-Hadad's first issue.

### III. Al-Hadad's Right of Confrontation

The right of confrontation under the Sixth Amendment to the United States Constitution and under Article I, Section 10 of the Texas Constitution guarantees a criminal defendant the right to be physically present during all phases of the

24

proceedings against him, unless the defendant waives that right through his own conduct. *Miller v. State*, 692 S.W.2d 88, 90 (Tex. Crim. App. 1985); *see* U.S. Const. amend. VI; Tex. Const. art. I, § 10; *see also Illinois v. Allen*, 397 U.S. 337, 338, 90 S. Ct. 1057, 1058 (1970). Consistent with these constitutional guarantees, Article 33.03 of the Texas Code of Criminal Procedure provides that in all felony prosecutions, "the defendant must be personally present at the trial" unless he "voluntarily absents himself after pleading to the indictment or information, or after the jury has been selected when trial is before a jury." Tex. Code Crim. Proc. Ann. art. 33.03. In his second point, al-Hadad contends that the trial court abused its discretion by removing him from the courtroom during trial because doing so violated his constitutional and statutory rights to be physically present during trial.

As al-Hadad recognizes, a criminal defendant can forfeit his right to be present at trial if, "after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom." *Allen*, 397 U.S. at 343, 90 S. Ct. at 1060–61. "It is essential to the proper administration of criminal justice that dignity, order, and decorum be the hallmarks of all court proceedings," and the "flagrant disregard in the courtroom of elementary standards of proper conduct should not and cannot be tolerated." *Id.*, 90 S. Ct. at 1061. Trial-court judges "confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to

25

meet the circumstances of each case," and "[n]o one formula for maintaining the appropriate courtroom atmosphere will be best in all situations." *Id.*, 90 S. Ct. at 1061. When faced with a disruptive defendant, a trial court may deal with him in at least "three constitutionally permissible ways": (1) bind and gag him, thereby maintaining his presence in the courtroom, (2) cite him for contempt, and (3) remove him from the courtroom until he agrees to conduct himself in an appropriate manner. *Id.* at 343–44, 90 S. Ct. at 1061.

Al-Hadad complains that he could not waive his confrontation rights because he was incompetent. He maintains that his behavior was not "sufficiently egregious to [warrant] his removal from the courtroom" and, alternatively, that he did not voluntarily absent himself. We disagree.

We have overruled al-Hadad's competency-to-stand-trial complaint. As set out above, Al-Hadad's unruly behavior disrupted his trial, and despite the trial court's warnings, his unwillingness to conduct himself in a dignified manner prevented the trial from being continued with him in the courtroom. The trial court thus acted within its discretion by removing al-Hadad from the courtroom and sending him back to the jail to participate in his trial remotely via Zoom. Once there, al-Hadad's behavior was so outrageous and self-destructive that the trial court could have reasonably inferred that he was, in effect, voluntarily absenting himself from the trial altogether. *Cf. Bottom v. State*, 860 S.W.2d 266, 267 (Tex. App.—Fort Worth 1993, no pet.) (concluding that continuing trial in the absence of defendant, who was in the

26

hospital because he had attempted suicide or some harm to himself, was not an abuse of discretion because defendant's absence at trial was voluntary to the extent that he chose to ingest large quantities of aspirin and arthritis medication). Moreover, there were times that al-Hadad chose to remain in the holdover cell rather than sit in the courtroom. Lastly, not only did Dr. Compton determine that al-Hadad could have maintained appropriate courtroom decorum if he had chosen to, but al-Hadad later admitted to doing everything he could to prevent his trial from going forward. *See Moore v. State*, 670 S.W.2d 259, 261 (Tex. Crim. App. 1984) ("In most instances, the validity of a trial court's decision that a defendant's absence was voluntary will have to be determined in hindsight."). We thus conclude that the trial court did not abuse its discretion by removing al-Hadad from the courtroom and by concluding that he had voluntarily absented himself from trial. *See Kimithi v. State*, 546 S.W.2d 323, 326 (Tex. Crim. App. 1977) (explaining that because defendant "demonstrated his unwillingness to conduct himself in a dignified manner each time he was brought into the courtroom," his "absence from the courtroom during the proceedings and the resulting denial of personal confrontation of the witnesses against him were a consequence of his own acts, which acts constituted a waiver of those rights to the extent that the exercise of them was impaired by his lawful removal from the court" (footnote omitted)). We overrule al-Hadad's second point.

## IV. Conclusion

Having overruled al-Hadad's two points, we affirm the trial court's judgment.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  August 3, 2023